# IN THE GENERAL SESSIONS COURT OF DICKSON COUNTY, TENNESSEE AT CHARLOTTE

State of Tennessee )
)
vs. ) Case No._____
)
Joshua Andrew Garton, )
)
Defendant. )

## MOTION TO DISMISS AND SUPPORTING MEMORANDUM

COMES NOW, the defendant, through counsel, under the U.S. Const. amend. I; and Art 1 Sec. 19 of the Tennessee Constitution, to move this honorable court to dismiss County Case # 2021-CR-118, which alleges Defendant violated Tenn. Code Ann. § 39-17-308 – Harassment.

For cause, Defendant will show:

1. The Meme[1] which portrays two people urinating on a headstone with Sgt. Baker's face, and a caption titled: "Just showing my respect to deputy Daniel Baker from the #dicksoncountypolicedepartment." is "protected speech" under the First Amendment to the U.S. Constitution and Art. 1 § 19 of the Tennessee Constitution and is, therefore, not criminal as a matter of law.[2]

---

[1] Meme: "an amusing or interesting item (such as a captioned picture or video) or genre of items that is spread widely online especially through social media." Merriam-Webster, https://www.merriam-webster.com/dictionary/meme (accessed 1/29/2021).

[2] "Article I, Section 19 of the Tennessee Constitution provides at least as much protection of the freedoms of speech and press as the First Amendment." *Lewis v. NewsChannel 5 Network, L.P.*, 238 S.W.3d 270, 288 (Tenn. Ct. App. 2007).

2. The First Amendment prohibits government officials from subjecting individuals to "criminal prosecutions" for protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

## I. FACTUAL BACKGROUND

3. On January 22, 2021, at approximately 0800, District Attorney General, Ray Crouch, directed the Tennessee Bureau of Investigation ("TBI") to investigate an image on social (known as a "Meme"[3]) that he believed to show two people urinating on the grave of Sgt. Daniel Baker. The Meme is shown below.





Just showing my respect to deputy Daniel Baker from the #dicksoncountypolicedepartment

---

[4] Photo taken from a post on the TBI's Twitter page @ https://twitter.com/DV_S_Man/status/1353013029097545729 (accessed 1/29/2021).

2

4. The Meme was not similar to Sgt. Baker's gravesite. Anyone who attended Sgt. Baker's funeral, or Sgt. Baker's one-year memorial, or performed a simple Google search, would have never believed the photo was authentic.

5. Nevertheless, TBI agents followed General Crouch's orders and went to Dickson Memorial Gardens to investigate. Photos from Sgt. Baker's one-year memorial, shown below, demonstrate the clear dissimilarities between the Meme and the actual grave.[5]



---

[5] These photos were taken at Sgt. Baker's one-year memorial service at Dickson Memorial Gardens on May 30, 2019. The first photo from the top was found at https://www.facebook.com/WDKNDickson/photos/pcb.10156447918261482/10156447917746482/. The other photos were found at https://www.tennessean.com/picture-gallery/news/2019/05/31/photos-one-year-memorial-service-dickson-county-sheriffs-office-sgt-daniel-baker/1295285001/.



6. The TBI visited the cemetery, Dickson Memorial Gardens, and determined the photo was fake, most likely because the headstones there are flat, unlike the Meme, which has upright headstones.[6]

---

[6] It should be noted that Defendant has not yet received State's discovery, and there is a real possibility the TBI determined the photo was inauthentic after performing specialized forensic testing.

4

7. After the TBI realized the photo was fake, they launched a manhunt and issued an all-points bulletin asking the public for help to find the Meme's creator. The TBI's tweets are listed below.



Tennessee Bureau of Investigation

This morning, District Attorney General Ray Crouch requested the TBI to investigate the origin of a troubling photograph, getting considerable attention on social media, that seemed to depict individuals desecrating the grave of a deceased local law enforcement officer. (1/2)





Tennessee Bureau of Investigation

Replying to @TBInvestigation

Agents visited the gravesite and quickly determined the photograph is not authentic. The TBI's work, however, continues and, to that end, the Bureau would encourage anyone with information about who may be responsible for manufacturing the image to call at 1-800-TBI-FIND. (2/2)



8. According to TBI Agent Joe Craig's affidavit of complaint, tips from local citizens and a "technical investigation conducted by SA [Andrew] Vallee identified Joshua Garton as the individual possibly responsible for the posting."

9. At approximately 1340, TBI Agents were told Mr. Garton was at the Dickson Police Department.

10. TBI Agents Joe Craig and Andrew Vallee subsequently interviewed Mr. Garton, who allegedly admitted to posting the Meme on Facebook under the name Joseph Callaway. Agent Craig said he told Mr. Garton the Meme caused

"emotional distress to the family of Sgt. Baker as well as law enforcement officers from Dickson County." Affidavit of Complaint.

11. Agent Craig charged Mr. Garton with Harassment and booked him into the Dickson County Jail, where his bond was set at $76,000.

## II. LAW & ARGUMENT

The First Amendment protects the image Mr. Garton allegedly posted because it expresses a viewpoint on a matter of public concern. See *Snyder v. Phelps*, 562 U.S. 443, 458, 2011.

The "bedrock principle underlying the First Amendment is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas. v. Johnson*, 491 U.S. 397, 414 (1989).[7] Furthermore, the "First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others." *Matal v. Tam*, 137 S. Ct. 1744, 1757 (2017). Regarding viewpoints, the Supreme Court has stated unequivocally: "<u>**Giving offense is a viewpoint**</u>." *Id.* (emphasis added).

**A. Sgt. Daniel Baker is a matter of public concern for two reasons:**

    **(1) his death garnered media coverage and is still a legitimate news interest, and**

---

[7] *Hustler Mag. v. Falwell*, 485 U.S. 46, 55–56 (1988),; *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984); *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 65, 72 (1983); *Carey v. Brown*, 447 U.S. 455, 462–63 (1980); *FCC v. Pacifica Found.*, 438 U.S. 726, 745–46 (1978),; *Young v. Am. Mini Theatres*, 427 U.S. 50, 63–65, 67–68 (1976) (plurality opinion); *Buckley v. Valeo*, 424 U.S. 1, 16–17 (1976); *Grayned v. City of Rockford*, 408 U.S. 104, 115, 92 S. Ct. 2294, 2302–03 (1972); *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95 (1972); *Bachellar v. Maryland*, 397 U.S. 564, 567 (1970); *United States v. O'Brien*, 391 U.S. 367, 382 (1968); *Brown v. Louisiana*, 383 U.S. 131, 142–43 (1966); *Stromberg v. California*, 283 U.S. 359, 368–69 (1931).

6

**(2) he became a symbol for law enforcement with the passage of Tenn. Code Ann. § 39-13-206, named "The Sergeant Daniel Baker Act."**

Protecting speech on matters of public concern is at the heart of the First Amendment. *Snyder*, 562 U.S. at 451–52. The First Amendment signifies "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *Id.*[8] This is because "speech concerning public affairs is more than self-expression; it is the essence of self-government." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). Consequently, "speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Connick v. Myers*, 461 U.S. 138, 145 (1983).

Matters of public concern are those which can "be fairly considered as relating to any matter of political, social, or other concern to the community," *Snyder*, 562 U.S. at 453.[9] Speech is also a matter of public concern when deals with a "subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Id.*[10] The perhaps **"inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern**." *Id.* (emphasis added).[11]

In 2011, the Supreme Court proved speech involving "matters of public concern" is given the highest First Amendment protection after it shielded a group of picketers from tort liability when their words caused emotional distress. The case

---

[9] Quoting *Connick*, 461 U.S. at 146.
[10] Quoting *San Diego*, supra, at 83–84, 125 S.Ct. 521.
[11] *Rankin v. McPherson*, 483 U.S. 378, 387, 107 S. Ct. 2891, 97 L. Ed. 2d 315 (1987).

7

at bar is analogous to *Snyder v. Phelps* because it involves offensive speech on matters of public concern protected by the First Amendment.

In *Snyder v. Phelps*, the Westboro Baptist Church ("Westboro") traveled to Maryland to protest at a military funeral. Westboro picketed approximately 1000 feet from the funeral of Marine Lance Corporal Matthew Snyder, who was killed in Iraq in the line of duty. The group held signs containing these messages:

- Semper Fi Fags
- Fag Troops
- Thank God for IEDs
- God Hates Fags
- Maryland Taliban
- Fags Doom Nations
- Not Blessed Just Cursed
- Thank God for Dead Soldiers
- You're Going to Hell
- God Hates You

*Snyder*, 562 U.S. at 454.

The Supreme Court analyzed Westboro's message based on its "**content, form, and context.**" *Snyder*, 562 U.S. at 453 (emphasis added). The Supreme Court determined their message related "to broad issues of interest to society at large, rather than matters of purely private concern." *Snyder,* 562 U.S. at 454. The Court stated:

> While these messages may fall short of refined social or political commentary, the issues they highlight—the political and moral conduct of the United States and its citizens, the fate of our Nation, homosexuality in the military, and scandals involving the Catholic clergy—are matters of public import.

*Snyder v. Phelps*, 562 U.S. 443, 454, (2011).

The Court also clarified the dominant theme of Westboro's message outweighed any concern the picketers may have offended Matthew Snyder's family:

> And even if a few of the signs—such as "You're Going to Hell" and "God Hates You"—were viewed as containing messages related to Matthew Snyder or the Snyders specifically, that would not change the fact that the overall thrust and dominant theme of Westboro's demonstration spoke to broader public issues.

*Snyder,* 562 U.S. at 454, (2011).

In May 2018, Sgt. Baker ultimately became a matter of public concern, and later a symbol of Law Enforcement, when he was killed in the line of duty. Sgt. Baker's death sparked wide-spread media coverage. Soon after his death, the Tennessee General Assembly enacted the "Sergeant Daniel Baker Act" under Tenn. Code Ann. § 39-13-206. State Representative Mary Littleton, R-Dickson, who sponsored the bill, was quoted in The Tennessean, saying the bill was named to "memorialize Sgt. Baker and to continue his memory for those in Dickson County as well as around the state."[12]

---

[12] Chris Gadd, The Tennessean, published 2/20/2019, https://www.tennessean.com/story/news/local/dickson/2019/02/20/sgt-daniel-baker-act-expedites-death-penalty-appeal-talks-continue/2926213002/ (last accessed 1/30/2021).

"The Sergeant Daniel Baker Act" shortens the time people spend between being sentenced to death and being executed. The Dickson County Sheriff's Department celebrated the Act's passing by posting a photo on their Facebook of Governor Lee signing the bill into law. [13] [14] The picture is shown below. [15]



B. The image Mr. Garton allegedly posted and the State's passage of "The Sergeant Daniel Baker Act" are both speech regarding the same subject matter: Sgt. Daniel Baker.

---

[14] DAG Ray Crouch is photographed standing behind Lisa Baker.

[15] The photo was posted on the Dickson County Sheriff's Facebook on July 15, 2019. @ https://www.facebook.com/DicksonCountySO/photos/a.785531768128943/2860086444006788/?type=3

10

"Discrimination against speech because of its message is presumed to be unconstitutional." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828 (1995). The government blatantly violates the First Amendment when it "**targets not subject matter, but particular views taken by speakers on a subject**." *Id.* at 829 (emphasis added).

As stated before, the State expressed its viewpoint on Sgt. Baker when it exalted his legacy and passed "The Sergeant Daniel Baker Act." The bill's sponsor said she wanted to "memorialize Sgt. Baker and to continue his memory for those in Dickson County as well as around the state." [16]

The Meme, for which Defendant was arrested, depicts two people urinating on a headstone with Sgt. Baker's face, and a caption titled: "Just showing my respect to deputy Daniel Baker from the #dicksoncountypolicedepartment." Although objectionable, the image merely represents a different viewpoint than one held by the State.

> History teaches that the first target of government repression is never the last. If we do not come to the defense of the free speech rights of the most unpopular among us, even if their views are antithetical to the very freedom the First Amendment stands for, then no one's liberty will be secure. In that sense, all First Amendment rights are "indivisible."
>
> We should not give the government the power to decide which opinions are hateful, for history has taught us that government is more apt to use this power to prosecute

---

[16] Chris Gadd, The Tennessean, published 2/20/2019, https://www.tennessean.com/story/news/local/dickson/2019/02/20/sgt-daniel-baker-act-expedites-death-penalty-appeal-talks-continue/2926213002/ (last accessed 1/30/2021)

11

minorities than to protect them. As one federal judge has put it, tolerating hateful speech is "the best protection we have against any Nazi-type regime in this country."

### III. CONCLUSION

1. The Meme was posted on a private Facebook and looked nothing like Sgt. Baker's grave, meaning no one close to Sgt. Baker would have believed the photo was real.

2. The Meme expressed a viewpoint regarding a matter of public concern that was diametrially opposed to the State's viewpoint.

3. The State disagreed with Defendant's alleged viewpoint and retaliated.

4. In the State' retaliation, they charged Mr. Garton with Harassment and set his bond at $76,000.

    For the reasons above, this case must be dismissed.

    Respectfully Submitted,

Jake Lockert, Public Defender
Counsel for the Defendant
110 N. Main St.

Ashland City, TN 37201
jake.lockert@tn.gov