## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| JOSHUA GARTON, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 3:21-cv-00338 |
| | § | |
| W. RAY CROUCH, DAVID RAUSCH, | § | JURY DEMANDED |
| BRADLEY NEALON, RUSSELL | § | |
| WINKLER, JOSHUA MELTON, | § | |
| JOSEPH CRAIG, DONALD ARNOLD, | § | |
| ANDREW VALLEE, and | § | |
| CITY OF DICKSON, TENNESSEE, | § | |
| | § | |
| *Defendants.* | § | |

## AMENDED COMPLAINT

For his Amended Complaint against the Defendants, Plaintiff Joshua Garton states to the Court and the Jury as follows:

## I. INTRODUCTION

1. In January 2021, Plaintiff Joshua Garton was investigated and arrested by a joint law enforcement taskforce for posting a fake photograph on social media that was critical of law enforcement. The fake photograph at issue was crudely designed to look as though people were urinating on the grave of a deceased police officer. Mr. Garton's fake photograph also included the overtly political message: "Just showing my respect to Deputy Daniel Baker from the #dicksonpolicedepartment."

2. The Defendants who were responsible for arresting Mr. Garton had actual knowledge—at the time that they arrested and charged him—that the photograph that Mr.

Garton had posted on Facebook was fake. At the urging of Defendant W. Ray Crouch, though—who wanted Mr. Garton punished for disrespecting law enforcement within his jurisdiction—they arrested Mr. Garton anyway and took him into custody. Thereafter, Mr. Garton was charged with a crime, and he was incarcerated for nearly two weeks while he awaited a hearing. Mr. Garton was ultimately released from jail after the bogus charge at issue was dismissed for lack of probable cause following Mr. Garton's first appearance in court.

3. Internal correspondence among the Defendants obtained through a public records request confirms both the Defendants' actual knowledge that "we violated [Mr. Garton's] 1st amendment rights" and the Defendants' actual knowledge that Mr. Garton "has a right to post." *See, e.g.,* Doc. #37-2, PageID ## 726–27.[1] Even so, because Mr. Garton had disrespected law enforcement, the Defendants vowed that: "[t]hat doesn't mean there are no consequences." *Id.* at PageID #727. Accordingly, the Defendants arrested Mr. Garton, charged him with a crime, and held him in jail on a bogus charge for nearly two weeks while he awaited a hearing. In the interim, the Defendants also humiliated Mr. Garton through reputationally damaging press releases and other media that prominently featured Mr. Garton's mugshot and the fact of his arrest.

4. Upon review by a court, the bogus criminal charge that the Defendants caused to be brought against Mr. Garton was dismissed outright for lack of probable cause that Mr. Garton's speech constituted a criminal offense. Thereafter, one Defendant lamented: "That is not good." Another Defendant complained—correctly—that: "We are finished." This action followed.

---

[1] The redactions in the appended public records are the TBI's. The TBI's counsel has also refused to affirm or certify independently that the redactions are legally warranted.

## II. PARTIES

5. Plaintiff Joshua Garton is a transient resident of Rutherford County who was investigated, arrested, prosecuted, and incarcerated by a joint law enforcement taskforce for disrespecting law enforcement. He is a citizen of Tennessee and may be contacted through his counsel.

6. Defendant W. Ray Crouch is the current District Attorney General for Tennessee's 23rd Judicial District. At all times relevant to this action, Defendant Crouch was professionally obligated to comply with the Constitution, to maintain a minimum level of professional competence, to refrain from abusing the legal process, and to avoid acting in "knowing disregard of obligations" or engaging in "a systematic abuse of prosecutorial discretion." Upon information and belief, Defendant Crouch failed to comply with these obligations by directing law enforcement to investigate, retaliate against, arrest, and charge Mr. Garton because he had disrespected law enforcement. Defendant Crouch is sued in his individual capacity regarding specified tort claims and in his official capacity regarding the Plaintiff's claim for injunctive relief. Defendant Crouch may be served at his residence located at 119 Stratton Blvd., Ashland City, Tennessee, 37015-1613, or wherever he may be found.

7. Defendant David Rausch is the current Director of the Tennessee Bureau of Investigation, a statewide law enforcement agency. In that role, upon information and belief, Defendant Rausch participated in the Defendants' investigation of, false arrest of, malicious prosecution of, and unconstitutional retaliation against Mr. Garton. At all times relevant to this action, Defendant Rausch had an obligation to comply with the Constitution and enforce the law, rather than participate in a conspiracy to violate it. During the events giving rise to this Complaint, Defendant Rausch also maintained that

citizens who care about the First Amendment and criticize law enforcement are akin to insurrectionists. Defendant Rausch is sued in his individual capacity regarding specified tort claims and in his official capacity regarding the Plaintiff's claim for injunctive relief. Defendant Rausch may be served at his residence located at 115 Durham Ln., Mt. Juliet, TN, 37122-0618, or wherever he may be found.

8. Defendant Bradley Nealon is the Deputy Director of the TBI. In that role, upon information and belief, Defendant Nealon participated in the Defendants' investigation of, false arrest of, malicious prosecution of, and unconstitutional retaliation against Mr. Garton. Defendant Nealon is sued in his individual capacity only, and he may be served at his residence located at 1594 Golliher Rd., Rockwood, Tennessee, 37854-5252, or wherever he may be found.

9. Defendant Russell Winkler was at all times relevant to this Complaint the Special Agent in Charge at the Tennessee Bureau of Investigation. In that role, upon information and belief, Defendant Winkler participated in the Defendants' investigation of, false arrest of, malicious prosecution of, and unconstitutional retaliation against Mr. Garton. Defendant Winkler is sued in his individual capacity only, and he may be served at his residence located at 725 Heritage Rd., Lebanon, Tennessee, 37087-6547, or wherever he may be found.

10. Defendant Joshua Melton is the Assistant Director of the Criminal Investigation Division of the Tennessee Bureau of Investigation. In that role, upon information and belief, Defendant Melton participated in the Defendants' investigation of, false arrest of, malicious prosecution of, and unconstitutional retaliation against Mr. Garton. Defendant Melton is sued in his individual capacity only, and he may be served at his residence located at 1433 Swamp Leanna Rd., Murfreesboro, Tennessee, 37129, or

-4-

wherever he may be found.

11.     Defendant Joseph Craig is an Assistant Special Agent in Charge at the Tennessee Bureau of Investigation. Defendant Craig has served as a TBI agent for twenty-two years and is currently assigned to the Middle Tennessee Criminal Investigations Division, where he supervises field agents covering territory that encompasses Dickson County. In that role, Defendant Craig participated in the Defendants' investigation of, false arrest of, malicious prosecution of, and unconstitutional retaliation against Mr. Garton. At all times relevant to this Complaint, Defendant Craig acted, by virtue of his position as a TBI agent, under color of state law. Defendant Craig is sued in his individual capacity only, and he may be served at his residence located at 2437 New Cut Rd., Greenbrier, Tennessee, 37073-5165, or wherever he may be found.

12.     Defendant Andrew Vallee is a Special Agent with the Tennessee Bureau of Investigation. Defendant Vallee is assigned to the Technical Services Unit and specializes in digital forensics, cellular network analysis, WiFi analysis, and various other technology related disciplines. In that role, Defendant Vallee participated in the Defendants' investigation of, false arrest of, malicious prosecution of, and unconstitutional retaliation against Mr. Garton. At all times relevant to this Complaint, Defendant Vallee acted, by virtue of his position as a TBI agent, under color of state law. Defendant Vallee is sued in his individual capacity only, and he may be served at his residence located at 631 Keeton Ave. 1, Old Hickory, Tennessee, 37138-3813, or wherever he may be found.

13.     Defendant Donald Arnold is a Captain in the Dickson Police Department who was responsible for working with the Tennessee Bureau of Investigation, on behalf of the City of Dickson, to falsely arrest, maliciously prosecute, and unconstitutionally retaliate against Mr. Garton. Defendant Arnold is sued in his individual capacity, and he

-5-

may be served at his residence located at 1012 Laurel Hills Dr., Dickson, Tennessee, 37055-4068, or wherever he may be found.

14.     Defendant City of Dickson, Tennessee, is a Tennessee municipality.  The City of Dickson is liable for its official policies, customs, and practices and for its failure to train its employees when it acts with deliberate indifference to a plaintiff's clearly established constitutional rights, as it did here.  The City of Dickson is a political subdivision of the State of Tennessee and, among other functions, it operates and maintains a law enforcement agency known as the Dickson Police Department.  At all times relevant to this action, the City of Dickson and its agents acted under color of state law.  Service upon the City of Dickson may be made upon Mayor Don L. Weiss Jr., at 600 East Walnut Street, Dickson, TN 37055.

### III.  JURISDICTION AND VENUE

15.     This Court has jurisdiction over the Plaintiff's federal claims in this civil action pursuant to 28 U.S.C. §§ 1331 and 1343(a).

16.     This Court has supplemental jurisdiction to adjudicate the Plaintiff's state law claims related to the Plaintiff's federal claims in this action pursuant to 28 U.S.C. § 1367(a).

17.     As the judicial district in which a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

18.     As the judicial district in which one or more Defendants reside, and all Defendants being residents of the State of Tennessee, venue is additionally proper in this Court pursuant to 28 U.S.C. § 1391(b)(1).

## IV. FACTUAL ALLEGATIONS

19.     The Plaintiff is a 29-year-old disabled male who suffers from mental illness. As a result of the Defendants' unconstitutional and tortious misconduct, the Plaintiff spent nearly two weeks in jail for a non-existent crime and became homeless.

20.     In January 2021, the Plaintiff pseudonymously posted the following political message and accompanying fake photograph—otherwise known as a "meme"[2]—on Facebook, a social media website:





21.     The above photograph does not actually depict the gravesite of Sergeant Baker. Indeed, it looks nothing like Sergeant Baker's gravesite. Instead, the photograph was an altered image from The Rites's 2009 album "Pissing On Your Grave" that

[2] A "meme" is an "interesting item (such as a captioned picture or video) or genre of items that is spread widely online especially through social media." *See* Merriam-Webster, https://www.merriam-webster.com/dictionary/meme (last accessed April 15, 2021).

contained a crudely integrated professional headshot of Sergeant Baker, a public figure, paired with the Plaintiff's commentary regarding a matter of public concern.[3]

22.     Defendant Crouch was offended by the Plaintiff's meme because it disrespected a deceased member of local law enforcement.  Accordingly, Defendant Crouch demanded that the Tennessee Bureau of Investigation and the other Defendants in this matter conduct a criminal investigation regarding it.  Thus, at the direction of Defendant Crouch, a joint task force of state and local law enforcement undertook to investigate the Plaintiff's meme in an effort to identify the Plaintiff and arrest him.

23.     Through herculean investigative work—including "TBI agents visit[ing] the gravesite of Baker"—the Defendants "quickly determined the photograph [was] not authentic."  Defendant Craig, in particular, realized that the meme was a photoshopped image in "a few seconds."

24.     The fact that the Plaintiff's meme was not authentic complicated the Defendants' desire to arrest the Plaintiff for an actual criminal offense, such as desecrating a grave.  Believing that disrespecting law enforcement still merited "consequences," though, the Defendants—acting in concert with one another—resolved to continue their investigation and arrest the Plaintiff for some other crime instead.

25.     Accordingly, even after determining that the meme at issue was not a genuine photograph—and despite lacking any reason to believe a crime had been committed—the TBI launched a manhunt and issued an all-points bulletin asking the

---

[3] In May of 2018, Sergeant Daniel Baker of the Dickson Police Department was killed in the line of duty. His death sparked widespread media coverage and, among other things, prompted the Tennessee General Assembly to enact the controversial "Sergeant Daniel Baker Act"—codified at Tenn. Code Ann. § 39-13-206—which accelerates review of death penalty cases and promotes faster executions.  At the time, State Representative Mary Littleton (R-Dickson), who sponsored the bill, was quoted in The Tennessean at saying the bill was named to "memorialize Sgt. Baker and to continue his memory for those in Dickson County as well as around the state."

-8-

public for help identifying the meme's creator.

26.    As examples of the TBI's public statements and manhunt regarding the Plaintiff's meme, during the Defendants' investigation into the Plaintiff's meme, and to secure assistance regarding it, the TBI issued the following public "news alert[s]":



27.    Ultimately, tips from local citizens and a "technical investigation conducted by [Defendant] Vallee identified [Plaintiff] Joshua Garton as the individual possibly responsible for the posting."

28.    After identifying the Plaintiff as the individual responsible for the meme, the Defendants located the Plaintiff, interrogated him, charged him with Harassment, booked him into the Dickson County Jail, and ensured that his bond was set at a punitive amount of $76,000.00—an amount designed to ensure that the Plaintiff would have to have a source hearing before he could post bail—in a deliberate effort to ensure that the Plaintiff would remain incarcerated for an extended period of time.

29.    The Defendants did not have probable cause to arrest the Plaintiff or to believe that the Plaintiff had committed any crime, and they knew it.  The Plaintiff's

photograph concerned a public figure regarding a matter of public concern. It also was not directed to any member of Sergeant Baker's family, though clearly established U.S. Supreme Court precedent dictated that it would have been constitutionally protected even if it had been. *See generally Snyder v. Phelps*, 562 U.S. 443 (2011). Despite the meme's heavy attention and its recirculation on social media by at least dozens of other individuals, the Defendants also declined to investigate or arrest any other person who posted the photograph at issue—including individuals who *did* send it to members of Sergeant Baker's family. Instead, because the Plaintiff was the creator of the meme at issue and the person who was responsible for its anti-law enforcement message, the Defendants singularly targeted, falsely arrested, and maliciously prosecuted the Plaintiff alone because the Plaintiff was the person who had expressed a viewpoint that disrespected and offended law enforcement.

30.     At all times relevant to this action, the United States Supreme Court had clearly established that:

> Official reprisal for protected speech "offends the Constitution [because] it threatens to inhibit exercise of the protected right," *Crawford–El v. Britton*, 523 U.S. 574, 588, n. 10, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998), and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out, *id.*, at 592, 118 S.Ct. 1584; *see also Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (noting that the government may not punish a person or deprive him of a benefit on the basis of his "constitutionally protected speech").

*Hartman v. Moore*, 547 U.S. 250, 256 (2006).

31.     At all times relevant to this action, the United States Supreme Court had also clearly established that the "bedrock principle underlying the First Amendment is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable," *Texas. v. Johnson*, 491 U.S. 397, 414

(1989), and that "[g]iving offense is a viewpoint." *Matal v. Tam*, 137 S. Ct. 1744, 1763

(2017). Indeed, the United States Supreme Court has held

> time and again that "the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers." *Street v. New York*, 394 U.S. 576, 592, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969). *See also Texas v. Johnson*, 491 U.S. 397, 414, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable"); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 55–56, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988); *Coates v. Cincinnati*, 402 U.S. 611, 615, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); *Bachellar v. Maryland*, 397 U.S. 564, 567, 90 S.Ct. 1312, 25 L.Ed.2d 570 (1970); *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 509–514, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); *Cox v. Louisiana*, 379 U.S. 536, 551, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); *Edwards v. South Carolina*, 372 U.S. 229, 237–238, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963); *Terminiello v. Chicago*, 337 U.S. 1, 4–5, 69 S.Ct. 894, 93 L.Ed. 1131 (1949); *Cantwell v. Connecticut*, 310 U.S. 296, 311, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *Schneider v. State (Town of Irvington)*, 308 U.S. 147, 161, 60 S.Ct. 146, 84 L.Ed. 155 (1939); *De Jonge v. Oregon*, 299 U.S. 353, 365, 57 S.Ct. 255, 81 L.Ed. 278 (1937).

*Id.*

32.     At all times relevant to this action, the United States Court of Appeals for

the Sixth Circuit had also clearly established that the applicable and binding precedent

regarding offensive speech is not ambiguous, and that government officials are obliged to

comply with it. *See, e.g., McGlone v. Metro. Gov't of Nashville*, 749 F. App'x 402, 406,

n.2 (6th Cir. 2018) ("Nashville's 'guess' is correct. Speech deemed hateful and offensive

is not only still protected by the First Amendment, it is the speech most in need of First

Amendment protection.") (citing *Texas v. Johnson*, 491 U.S. 397, 414, 109 S.Ct. 2533, 105

L.Ed.2d 342 (1989) ("If there is a bedrock principle underlying the First Amendment, it

is that the government may not prohibit the expression of an idea simply because society

finds the idea itself offensive or disagreeable.")).

33.     The Defendants—one of whom is an attorney who wields extraordinary

prosecutorial authority—neither care about nor feel constrained by clearly established First Amendment law.  Indeed, the Defendants' internal correspondence reflects that they abhor the rights that the First Amendment guarantees individuals like the Plaintiff.

34.    For example, Defendants' correspondence reflects their actual knowledge that "we violated [Mr. Garton's] 1st amendment rights" and that Mr. Garton "has a right to post."   According to the Defendants, however, "[t]hat doesn't mean there are no consequences," which the Defendants collectively ensured the Plaintiff experienced:




35.    The "consequences" that the Defendants ensured would result from disrespecting law enforcement included subjecting the Plaintiff to a false arrest and malicious prosecution, incarcerating him for weeks, and broadcasting his mugshot and the fact of his arrest to news media and the public in retaliation for disrespecting police.

36.    The Defendants similarly believe that *criticizing* their constitutionally

-12-

repugnant behavior is unwarranted. Indeed, the Defendants routinely characterized criticism of their behavior as "threats."

37. Defendant Rausch, in particular—the current Director of Tennessee's top law enforcement agency— not only believes that arresting the Plaintiff for his offensive speech is appropriate, but that criticizing law enforcement for violating the Plaintiff's First Amendment rights is akin to defending insurrection:



38. After arresting the Plaintiff, the Defendants acted in concert to prepare and issue a media release regarding the Plaintiff's arrest that included his full name, his mugshot, his date of birth, a reference to unrelated criminal charges, and the fact that the Defendants had secured a substantial bond that ensured the Plaintiff would be incarcerated for an extended time period. The purpose of this press release, regarding which all Defendants were apprised, was to humiliate and retaliate against the Plaintiff and to deter other similarly situated persons who wished to exercise their constitutional rights to criticize or disrespect law enforcement from doing so.

39. The public reaction to the Defendants' press release and their celebration of the Plaintiff's arrest was not what the Defendants anticipated it would be. *See generally*

Doc. #37-1.[4]  In response to their press release, the TBI received dozens of critical calls from citizens across the nation who were upset about the Defendants' flagrant disregard for the Constitution and their extreme ignorance of basic First Amendment rights.  Upon receiving such criticism, one TBI dispatcher complained: "We did not sign up for this."

40.    In response to the legitimate public criticism that they were receiving, the Defendants did not release the Plaintiff from jail or take steps to remedy their flagrantly unconstitutional conduct.  Instead, to inhibit such criticism, the TBI began tracking the critical calls they were receiving, surveilling callers, and, in at least one instance, decided to "try[] to pin down who [the caller was] so we can ask the local police and maybe have them go out there and ask him to stop."

41.    After the Defendants issued their press release, through the Tennessee Bureau of Investigation, celebrating their investigation, arrest, and prosecution of the Plaintiff, the TBI began receiving requests for comment from local and national news outlets asking them to explain how they could have lawfully arrested the Plaintiff under the circumstances.

42.    Because the Plaintiff's arrest was not lawful and could not plausibly have been lawful, the TBI was unable to do so.  Accordingly—and notwithstanding that specific Defendants employed by the TBI had investigated and then arrested the Plaintiff, participated in the charging decision at issue, and that Defendant Craig himself had sworn out the affidavit enabling the Plaintiff's criminal charge, *see* Doc. #1-3—the TBI misleadingly deflected responsibility to Defendant Crouch and responded with some version of the following statement:

_____

[4] Again, the redactions are the TBI's.

When requested to investigate an incident by a District Attorney General, TBI agents serve as factfinders.

The DA determines what, if any, charges are placed.

For that reason, we will need to refer you to the District Attorney General with questions regarding the charge in this case.

43.    The Plaintiff would ultimately be incarcerated for nearly two full weeks before he was able to appear before a judge for a hearing on the charge at issue.   The Plaintiff was thus continuously incarcerated at the Dickson County Jail from January 22, 2021, until his preliminary hearing before Judge Craig Monsue on February 3, 2021. Further, although several other individuals posted the very same image, only the Plaintiff was investigated, arrested, and prosecuted for doing so, because the Defendants targeted the Plaintiff specifically based on the viewpoint he had expressed about law enforcement.

44.    During the Plaintiff's preliminary hearing, Defendant Craig repeatedly admitted that the Plaintiff had not posted the meme at issue with an unlawful purpose, which was a threshold element of the harassment charge that he and the other Defendants had conspired to initiate and then did initiate against the Plaintiff.

45.    At the conclusion of the Plaintiff's preliminary hearing on February 3, 2021, Judge Monsue announced that the Court would dismiss the charge against the Plaintiff for lack of probable cause.  A written order and judgment dismissing, for lack of probable cause, the harassment charge that the Defendants initiated against the Plaintiff was entered by the Court thereafter.  *See* Doc. #1-4.  The Court spoke through this order—set forth at Doc. #1-4—alone.  Accordingly, the Plaintiff was the prevailing party in his criminal proceeding, and, having prevailed in full, the Plaintiff had no adverse order to appeal.

46.    Only after the Court's written order dismissing his case was entered was the

-15-

Plaintiff finally released from jail. The Plaintiff became homeless as a result of the Defendants' conduct, however, so by that point, he had no home to which he could return. Accordingly, the Plaintiff came to reside at a homeless shelter.

47. As a direct and proximate result of the Defendants' unlawful actions, the Plaintiff suffered extreme damages, a deprivation of his constitutional rights, unlawful detention, psychological and emotional trauma, and damage to his reputation.

## V. CAUSES OF ACTION

CLAIM #1: MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983 AND TENNESSEE COMMON LAW

48. The Plaintiff incorporates and realleges the foregoing allegations as if fully set forth herein.

49. Acting in concert with one another, and without probable cause to arrest the Plaintiff, the Defendants wrongfully instituted legal process against the Plaintiff and subjected the Plaintiff to a wrongful investigation, wrongful prosecution, and wrongful incarceration in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

50. Public records confirm that all Defendants made, influenced, or specifically participated in the decision to investigate, arrest, and/or charge the Plaintiff; that the Defendants acted in concert with one another to ensure that the Plaintiff was investigated, charged, and maliciously prosecuted for his speech; and that all Defendants were continuously apprised of the status of the Plaintiff's case at all stages of his proceedings. The Defendants thus acted individually and collectively in pursuit of a common plan under color of law with malicious intent to deprive the Plaintiff of his rights secured by the United States Constitution. The Defendants have also undertaken to conceal the full scope of their individual involvement by corresponding through phone calls designed to

-16-

avoid creating public records evidencing their individual involvement and by making extensive redactions to public records—including text message correspondence between specific Defendants about the Plaintiff's proceedings—that repeatedly indicate the involvement of each individual Defendant, which redactions have been made on the basis that they are "investigative records" that may only be divulged following a subpoena or court order. *See generally* Docs. ## 37-1; 37-2; 37-3; 37-5.

51.     All Defendants, individually and collectively, lacked probable cause to institute criminal process against the Plaintiff. Even so, employees and agents of the Tennessee Bureau of Investigation—including Defendants Rausch, Nealon, Winkler, Melton, Craig, and Vallee—working alongside investigators from the Defendant City of Dickson's Police Department, including Defendant Arnold, "arrested and charged" the Plaintiff, and the TBI issued a press release celebrating the Plaintiff's arrest and charge that emphasized the joint involvement of both law enforcement agencies. *See* Doc. #37-1, PageID #617.

52.     The Defendants' criminal prosecution was enabled by a constitutionally defective and facially invalid *Affidavit of Complaint* signed by Defendant Craig that omitted essential, material information evidencing that no crime had been committed and also falsely asserted, among other things, that the Plaintiff's speech had criminally "caused emotional distress to . . . the law enforcement officers from Dickson County." *See* Doc. #1-3.

53.     As a consequence of the Defendants' wrongful institution of legal process against the Plaintiff, the Plaintiff suffered a deprivation of liberty apart from his initial seizure, including continuous detention in jail for nearly two weeks without probable cause.

54.   The Plaintiff's criminal proceeding was resolved in the Plaintiff's favor, resulting in a written order reflecting that the Plaintiff was the prevailing party. Given that the Plaintiff was the prevailing party, and given the interlocutory status of the order ruling in the Plaintiff's favor, the Plaintiff both could not appeal the Court's order and had no reason to do so given that the Plaintiff prevailed in full; obtained the complete dismissal of the charge against him; and won an assessment of costs taxed to the prosecutor. *See* Doc. #1-4.

55.   The Plaintiff's criminal proceeding was not resolved due to any plea or settlement, but was resolved in the Plaintiff's favor because he was innocent of any criminal charge and because the Defendants lacked probable cause to believe that he had committed any crime.

56.   Although inessential to his malicious prosecution claim, the Defendants acted with malice toward the Plaintiff and subjected the Plaintiff to a wrongful investigation, wrongful prosecution, and wrongful incarceration because of the constitutionally protected, anti-law enforcement, and disrespectful viewpoint that the Plaintiff had expressed regarding the Dickson County Police Department.

57.   Unrelated to Defendant Crouch's preparation for the initiation of a prosecution or for judicial proceedings, and unconnected to the judicial process, Defendant Crouch performed and directed investigative and administrative functions to facilitate and enable the Plaintiff's arrest without probable cause; he directed a search for clues and corroboration that would give him probable cause to recommend that the Plaintiff be arrested; and he played the role of an advocate against the Plaintiff before he had—and without ever acquiring—probable cause to have the Plaintiff arrested.

58.   In so doing, Defendant Crouch acted independent of his prosecutorial role

as a District Attorney and, separately, in violation of his professional ethical obligations, among other things, to refrain from abusing the legal process, to avoid acting in "knowing disregard of obligations," and to avoid engaging in "a systematic abuse of prosecutorial discretion." Defendant Crouch did so because he is incapable of acting neutrally, constitutionally, and without bias where Sgt. Baker and his family are concerned. *See generally* Doc. #37-8.

59.    As a direct and proximate result of the Defendants' malicious prosecution of the Plaintiff, the Plaintiff suffered injuries, including, but not limited to, actual damages, economic damages, a deprivation of his constitutional rights, unlawful detention, psychological and emotional trauma, and damage to his reputation.

<u>CLAIM #2: FALSE ARREST (42 U.S.C. § 1983)</u>

60.    The Plaintiff incorporates and realleges the foregoing allegations as if fully set forth herein.

61.    At all times relevant to this action, no Defendant had probable cause to arrest or direct the arrest of the Plaintiff.

62.    The Plaintiff was nonetheless arrested at the Defendants' behest and direction based on a facially invalid warrant that was premised upon Defendant Craig's materially false statements and/or material omissions.

63.    At all times relevant to this action, all Defendants, both individually and collectively, lacked reasonable grounds for belief supported by more than mere suspicion that the Plaintiff had committed a crime.

64.    The totality of the circumstances and the facts and circumstances of which the Defendants had knowledge at the moment of the Plaintiff's arrest were insufficient to warrant a prudent person in believing that the Plaintiff had committed an offense.

65. Even so, the Plaintiff was falsely arrested for a violation of Tenn. Code Ann. § 39-17-308 by Defendant Craig—in concert with and at the direction of Defendant Crouch and the other Defendants—without probable cause. Thereafter, the Defendants celebrated their arrest through a press release that stated: "Special Agents from the Tennessee Bureau of Investigation, working alongside investigators from the Dickson Police Department, have arrested and charged a Lyles man accused of manufacturing and disseminating a harassing photograph on social media." *See* Doc. #37-1, PageID #617. The release further detailed that the Plaintiff's initial investigation and ultimate arrest came "[a]t the request of 23rd District Attorney General Ray Crouch[.]" *Id.*

66. The charges against the Plaintiff resulted in a deprivation of the Plaintiff's liberty, in that the Plaintiff was taken into custody, jailed continuously between January 22, 2021, and February 3, 2021, assigned a deliberately punitive bond that he could not pay, and forced to seek a preliminary hearing to obtain his freedom from the false and malicious charge that the Defendants concocted against him without probable cause to believe the Plaintiff had committed any crime.

67. The Defendants acted with malice when they falsely arrested and baselessly charged the Plaintiff with violating Tenn. Code Ann. § 39-17-308.

68. The Defendants falsely arrested and charged the Plaintiff with violating Tenn. Code Ann. § 39-17-308 despite their actual knowledge that clearly established law made clear that the Plaintiff's speech was constitutionally protected and was not illegal.

69. The Plaintiff suffered actual damages as a proximate result of the Defendants' false arrest.

### CLAIM #3: FIRST AMENDMENT RETALIATION (42 U.S.C. § 1983)

70. The Plaintiff incorporates and realleges the foregoing allegations as if fully

set forth herein.

71.  At all times relevant to this Complaint, the Plaintiff had First Amendment rights as a citizen that were not inconsistent with his status as a suspect or defendant.

72.  Retaliation based upon a citizen's exercise of his constitutional rights violates the United States Constitution.

73.  By posting the meme at issue, the Plaintiff engaged in speech and expression protected by the First and Fourteenth Amendments to the Constitution, and Judge Monsue's written order—set forth at Doc. #1-4—did not hold otherwise.

74.  In retaliation for the Plaintiff engaging in speech and expression protected by the Constitution, the Defendants planned and then took extreme adverse actions against the Plaintiff, including, but not limited to, subjecting the Plaintiff to a wrongful investigation, wrongful prosecution, and extended wrongful incarceration; publicly humiliating the Plaintiff through public statements and media releases touting the Defendants' false arrest of the Plaintiff; maliciously prosecuting the Plaintiff; and seeking and securing an unreasonably high and punitive bond to prevent the Plaintiff's timely release from jail.

75.  The adverse actions that the Defendants took against the Plaintiff would deter a person of ordinary firmness from continuing to engage in constitutionally protected conduct and would likely have a strong deterrent effect on others similarly situated, which is precisely what the Defendants' actions were designed to do.

76.  The Defendants took adverse actions against the Plaintiff at least in part because of the Plaintiff's exercise of constitutionally protected conduct and his clearly established First Amendment rights.

77.  The Defendants took adverse actions against the Plaintiff at least in part

because the Defendants disagreed with the offensive viewpoint that the Plaintiff had expressed.

78. The Defendants took adverse actions against the Plaintiff at least in part because the Defendants wished to see the Plaintiff suffer significant "consequences" for his constitutionally protected speech.

79. The Defendants took adverse actions against the Plaintiff at least in part because the Defendants do not respect fundamental First Amendment guarantees and because the Defendants do not believe that they are or should be constrained by them.

80. As a proximate result of the Defendants' unconstitutional retaliation against the Plaintiff, the Plaintiff suffered damages.

## CLAIM #4: DENIAL OF EQUAL PROTECTION (42 U.S.C. § 1983)

81. The Plaintiff incorporates and realleges the foregoing allegations as if fully set forth herein.

82. The Plaintiff was not the only person to post the image that resulted in the Plaintiff's investigation, arrest, and prosecution.

83. Instead, dozens—possibly hundreds—of other individuals posted the very same image, and the Defendants were actually aware of that fact.

84. Even though similarly situated individuals posted the same image as the Plaintiff on social media, no similarly situated individual who posted the same image at issue was arrested or prosecuted for doing so.

85. Similarly situated individuals who posted the same image at issue were not subject to the same treatment the Plaintiff received because their posting of the image at issue expressed a different viewpoint than the Plaintiff had expressed.

86. The Defendants treated the Plaintiff disparately as compared to similarly

-22-

situated persons, and such disparate treatment burdened the Plaintiff's fundamental and clearly established First Amendment rights.

87.     The Defendants treated the Plaintiff disparately as compared to similarly situated persons, and such disparate treatment had no rational basis.

88.     The Defendants' disparate treatment of the Plaintiff contravened the 14th Amendment and deprived the Plaintiff of the equal protection of the laws.

89.     As a proximate result of the Defendants' disparate treatment of the Plaintiff, the Plaintiff suffered actual and severe damages.

CLAIM #5: CIVIL CONSPIRACY/AGENCY LIABILITY

90.     The Plaintiff incorporates and realleges the foregoing allegations as if fully set forth herein.

91.     At all times relevant to this matter, the Defendants acted in concert with, at the direction of, and as agents of, one another to commit the foregoing tortious misconduct, and all Defendants acted under color of law.

92.     At all times relevant to this matter, the Defendants had the intent and knowledge of one another's intent to accomplish by concert an unlawful purpose—or to accomplish by concert a lawful purpose by unlawful means—all of the foregoing tortious misconduct, including conspiring with one another to effect the Plaintiff's false arrest, malicious prosecution, and take other unconstitutionally retaliatory acts against him.

93.     The Defendants conspired with one another and agreed to injure the Plaintiff through unconstitutional action under color of law.

94.     Each Defendant shared in the general conspiratorial objective to injure the Plaintiff for expressing a viewpoint critical of law enforcement, causing the Plaintiff injury.

95.     The Defendants are liable for one another's acts undertaken in furtherance of their civil conspiracy, and each Defendant is jointly and severally liable for the unlawful acts of each other Defendant pursuant to Tenn. Code Ann. § 29-11-107(b)(1) and general federal common law, *see Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985).

CLAIM #6: THE CITY OF DICKSON'S UNCONSTITUTIONAL POLICIES AND PRACTICES

96.     The Plaintiff incorporates and realleges the foregoing allegations as if fully set forth herein.

97.     The City of Dickson, acting by and through its policymakers, officers, and agents, including Defendant Arnold, and acting under color of state law, violated the Plaintiff's clearly established rights secured by the First and Fourteenth Amendments to the United States Constitution.

98.     The tortious acts and omissions of the City of Dickson, acting by and through its policymakers, officers, and agents, including Defendant Arnold, were the direct and proximate result of official municipal policies or customs created by the City of Dickson and their execution or implementation against the Plaintiff, causing the Plaintiff injury.

99.     The City of Dickson's customs, practices, or de facto policies are evidenced by actions taken by officials with final decision-making authority, policies of inadequate training or supervision, and a custom of tolerance or acquiescence of federal rights violations, including, in this instance, the City of Dickson's premeditated and public commitment to violating the Plaintiff's clearly established First Amendment rights and its failure to remedy its unconstitutional conduct even after acquiring actual knowledge that it had acted unconstitutionally.  Despite the City of Dickson's actual knowledge of its unconstitutional conduct, officials with final decision-making authority have ratified it

and knowingly misrepresented the City of Dickson's underlying involvement in the Plaintiff's unconstitutional arrest and prosecution in lieu of remedying it. *See* Doc. #37-4, PageID #831.

100.   Upon information and belief, the City of Dickson, through its employees, engages in a clear and persistent pattern of unconstitutional action against those who express views critical of law enforcement; it has notice or constructive notice of that fact; it has tacitly approved of the unconstitutional conduct at issue, such that its deliberate indifference can be said to amount to an official policy of inaction; and the City of Dickson's unconstitutional custom was the moving force or direct causal link in the deprivation of the Plaintiff's constitutional rights. This pattern specifically includes, but is not limited to, the initiation of the investigation into the Plaintiff as well as the Plaintiff's subsequent arrest and prosecution, and it is evident from the Defendants' requests to other law enforcement agencies to launch investigations into individuals who contacted the TBI to protest the Plaintiff's treatment.

101.   The City of Dickson fails to train or supervise its employees to prevent constitutional violations like those the Plaintiff suffered, it has knowingly misrepresented its involvement in the constitutional violations that the Plaintiff suffered, and it provides training and supervision that is inadequate to prevent such violations from recurring.

102.   The City of Dickson's inadequate training is a result of the City of Dickson's deliberate indifference to federal constitutional rights. For example, the text message exchange between two Defendants explicitly stating that even though the Plaintiff exercised his First Amendment rights, he could still be subject to "consequences"—up to and including prosecution and incarceration at the hands of the state—indicates a lack of understanding of the very nature of the First Amendment. Coupled with the City of

-25-

Dickson's and its employees' repeated violations of the Plaintiff's and other citizens' First Amendment rights and its knowing misrepresentations regarding the underlying role that the City of Dickson and its employees had in the Plaintiff's arrest and prosecution, this demonstrates a widespread pattern of ignorance of or deliberate indifference to the First Amendment, indicating a widespread failure of training.

103. The City of Dickson's inadequate training was closely related to or actually caused the Plaintiff's injury.

104. The City of Dickson has failed to promulgate appropriate policies or procedures or take other measures to prevent violations of the First Amendment by its employees, agents, or officers, and upon information and belief, no employee involved in the Plaintiff's false arrest, malicious prosecution, or unconstitutional retaliation, including Defendant Arnold, has been disciplined for misconduct.

105. As a direct and proximate consequence of the City of Dickson's failure to develop, implement, and otherwise devise a policy of adequate training and/or supervision for its employees, agents, and officers, the Plaintiff was deprived of his civil and constitutional rights, privileges, and immunities and was subjected to criminal prosecution and an extended period of unlawful incarceration. Properly trained and supervised employees, agents, and officers would have known not to engage in the acts which resulted in the deprivation of the Plaintiff's civil and constitutional rights.

106. As a direct and proximate result of the customs, practices, and/or de facto policies of the City of Dickson and the City of Dickson's deliberate indifference to the Plaintiff's clearly established constitutional rights, the Plaintiff suffered damages.

-26-

<u>CLAIM #7: INJUNCTIVE AND DECLARATORY RELIEF AGAINST THE CITY OF DICKSON AND DEFENDANTS CROUCH AND RAUSCH IN THEIR OFFICIAL CAPACITIES</u>

107.    The Plaintiff incorporates and realleges the foregoing allegations as if fully set forth herein.

108.    Upon information and belief, Defendant Crouch desires to re-prosecute the Plaintiff regarding this specific instance of protected speech and will seek his indictment via direct presentment in the absence of an injunction prohibiting him from doing so.

109.    Defendant Crouch has been asked, through counsel, if he will affirmatively disclaim all future investigation and prosecution of Mr. Garton regarding this matter, and Defendant Crouch has expressly declined to do so.  *See* Doc. #37-6, PageID ## 1237–38.

110.    Defendant Crouch harbors extreme personal animus toward the Plaintiff; he has acted with bias toward Plaintiff, including by directing the Plaintiff's investigation; and he is incapable of approaching the Plaintiff's disrespectful speech neutrally and without bias—despite actual knowledge of the Plaintiff's mental illness—because Defendant Crouch "has been publicly and closely aligned with Sgt. Baker, his family and law enforcement through the pendency of" the criminal case of Sgt. Baker's killer.  *See generally* Doc. #37-8; *id*. at PageID #1392.

111.    The Tennessee Bureau of Investigation and the Defendant City of Dickson consider the investigation of the Plaintiff to be open and ongoing, and they have redacted and refused to disclose to the Plaintiff's counsel records that would otherwise be public on the basis that they withheld records are "investigative" in nature.  The Defendant City of Dickson and its agents have also falsely and formally asserted a "lack of involvement in Plaintiff's arrest," *see* Doc. 37-4, PageID ## 831, despite abundant public records revealing their extensive involvement and continuous interest in it.

-27-

112.    Upon information and belief, Defendant Rausch will direct his agency's resources toward investigating the Plaintiff and anyone who expresses support for the Plaintiff if the Plaintiff again exercises his constitutional right to criticize law enforcement.

113.    Upon information and belief, Defendant Rausch, acting in his official capacity as the Director of and policymaker for TBI, has demonstrated a clear and persistent pattern of failing to discipline the TBI's employees, agents, or officers for constitutional violations; has policies that are insufficient to protect the constitutional rights of individuals as those policies are applied and understood within the TBI; and/or actively allows and participates in retaliation when citizens exercise their constitutionally protected rights.  This is evident from, among other things, the fact that every TBI employee, agent, or officer involved in the tortious misconduct set forth in this Complaint violated the Plaintiff's clearly established First Amendment right to express an offensive viewpoint regarding a matter of public concern.  Each of those employees, agents, or officers retaliated against the Plaintiff and, upon information and belief, none of those individuals was found to have violated a TBI policy thereafter.  Each of those employees, agents, or officers misused their positions as law enforcement agents by investigating the Plaintiff without reasonable articulable suspicion or probable cause that any crime had occurred, and Director Rausch personally oversaw the implementation of these polices and personally and expressly approved the actions of his employees in this matter.

114.    Upon information and belief, Defendants Crouch, Rausch, and the City of Dickson may or will continue to pursue the investigation and prosecution of the Plaintiff regarding this specific instance of protected speech absent an injunction.

115.    If the Plaintiff continues to be investigated and prosecuted, the Plaintiff will

-28-

necessarily suffer immediate and irreparable harm, harm resulting from incarceration, and harm resulting from having to defend against another false and malicious prosecution.

116.     Because Defendants Crouch, Rausch and the City of Dickson have previously subjected the Plaintiff to an investigation, arrest, and a prolonged period of incarceration as a result of his exercise of clearly established First Amendment rights, and because the Plaintiff credibly fears that he will experience the same consequences if he exercises his clearly established First Amendment rights in the same manner again, the Plaintiff's speech will be irreparably chilled in the absence of a permanent injunction.

117.     Remedies available at law, such as monetary damages, are inadequate to compensate the Plaintiff for the injury to his First Amendment rights.

118.     Considering the balance of hardships between the Plaintiff and Defendants Crouch, Rausch, and the City of Dickson, a remedy in equity is warranted.

119.     The public interest would not be disserved and would be furthered by a permanent injunction forbidding Defendants Crouch, Rausch, and the City of Dickson from taking adverse action against the Plaintiff as a result of his exercise of clearly established First Amendment rights, which Defendants Crouch, Rausch, and the City of Dickson have made clear they do not and will not respect.

120.     The Plaintiff is additionally and alternatively entitled to declaratory relief under both federal law and Tenn. Code Ann. § 1-3-121 for the same reasons.  In the event that this Court finds that injunctive relief is not warranted, the Plaintiff is still entitled to declaratory relief sufficient to inform state and local law enforcement that the Plaintiff's speech and expression are fully protected under the First Amendment and may not result in the Plaintiff's arrest, prosecution, or governmental retaliation of any kind.

-29-

## VI.  PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for the following relief:

1.      That process issue, and that the Defendants be required to appear and answer this Complaint within the time required by law;

2.      That the Plaintiff be awarded all compensatory, consequential, incidental, and punitive damages to which he is entitled in an amount not less than $1 million;

3.      That the Plaintiff be awarded all costs and discretionary costs of trying this action;

4.      That the Plaintiff be awarded his reasonable attorney's fees pursuant to 42 U.S.C. § 1988(b);

5.      That a jury of 12 be empaneled to try this cause;

6.      That pre-judgment and post-judgment interest be awarded to the Plaintiff;

7.      That permanent injunctive and declaratory relief issue; and

8.      That the Plaintiff be awarded any and all further relief to which it appears he is entitled.

Respectfully submitted,

/s/ Daniel A. Horwitz
Daniel A. Horwitz, BPR #032176
Lindsay B. Smith, BPR # 035937
HORWITZ LAW, PLLC
4016 Westlawn Dr.
Nashville, TN 37209
daniel@horwitz.law
lindsay@horwitz.law
(615) 739-2888

*Attorneys for Plaintiff*

-30-

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of July, 2021, a copy of the foregoing was transmitted via CM/ECF to:

Amanda S. Jordan
Meghan Murphy
Senior Assistant Attorneys General
P.O. Box 20207
Nashville, TN 37202-0207
amanda.jordan@ag.tn.gov
meghan.murphy@ag.tn.gov


Mary Elizabeth McCullohs
Senior Assistant Attorney General
Office of the Attorney General
P.O. Box 20207
Nashville, TN 37202-0207
mary.mccullohs@ag.tn.gov


Ross Vincent Smith
Kristin Ellis Berexa
Farrar & Bates, LLP
12 Cadillac Drive
Suite 480
Nashville, TN 37027
(615) 254-3060
Fax: (615) 254-9835
ross.smith@farrar-bates.com
kristin.berexa@farrar-bates.com


By:     /s/ Daniel A. Horwitz

-31-