# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| JOSHUA GARTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:21-cv-00338 |
| | ) | Judge Aleta A. Trauger |
| W. RAY CROUCH et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Before the court are three motions seeking the dismissal of claims set forth in plaintiff Joshua Garton's Amended Complaint (Doc. No. 45): (1) the Motion to Dismiss by defendant District Attorney W. Ray Crouch (Doc. No. 46); (2) the Motion to Dismiss filed jointly by defendants the City of Dickson and Donald Arnold (collectively, the "City defendants") (Doc. No. 51); and (3) the Motion to Dismiss filed by defendants David Rausch, Bradley Nealon, Russell Winkler, Joshua Melton, Joseph Craig, and Andrew Vallee (the "TBI defendants") (Doc. No. 49). Each of the motions seeks dismissal on the grounds of lack of subject-matter jurisdiction under Rule 12(b)(1) and, alternatively, under Rule 12(b)(6), for failure to state a claim for which relief may be granted.

For the reasons set forth herein, Crouch's motion and the TBI defendants' motion will both be granted in part; the City defendants' motion will be granted in its entirety.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Parties

According to the Amended Complaint, plaintiff Joshua Garton is a "transient" resident of Rutherford County. He is a twenty-nine-year-old disabled man who suffers from mental illness.

Defendant W. Ray Crouch is currently and has been at all relevant times the District Attorney General for Tennessee's 23rd Judicial District, which includes Dickson County. He is sued in both his individual and official capacity.

Defendant David Rausch is the current Director of the Tennessee Bureau of Investigation ("TBI"). He is sued in both his individual and official capacity. Defendant Bradley Nealon is the Deputy Director of the TBI; defendant Russell Winkler was at all relevant times the Special Agent in Charge at the TBI; defendant Joshua Melton is the Assistant Director of the Criminal Investigation Division of the TBI; defendant Joseph Craig is an Assistant Special Agent in Charge at the TBI and is currently assigned to the Middle Tennessee Criminal Investigations Division, where he supervises field agents covering territory that includes Dickson County; and defendant Andrew Vallee is a Special Agent with the TBI assigned to the Technical Services Unit, specializing in digital forensics, cellular network and WiFi analysis, and other technology-related disciplines. Defendants Nealon, Winkler, Melton, Craig, and Vallee are sued in their individual capacity only.

Defendant David Arnold is a Captain in the Dickson Police Department; he is sued in his individual capacity only. The City of Dickson is a Tennessee municipality of which the Dickson Police Department, which employs Arnold, is a department.

**B.     The Incident**

In January 2021, Garton pseudonymously posted on Facebook a fake and obviously altered photograph that appears to depict two individuals urinating on a tombstone. The tombstone features a photograph of Sergeant Daniel Baker, a former police officer with the Dickson Police Department who was killed in the line of duty in May 2018. The photograph was accompanied by the caption: "Just showing my respect to deputy Daniel Baker from the #dicksoncountypolicedepartment." (Doc. No. 45 ¶ 1.) The Amended Complaint refers to the

photograph and caption together as a "meme," defined as an "interesting item (such as a captioned picture or video) or genre of items that is spread widely online especially through social media." (*Id.* at 7 n.2 (quoting Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/meme).) The court, hereinafter, refers to the photograph and caption together as the "Meme."

The photograph does not actually depict Sergeant Baker's gravesite and, in fact, "looks nothing like" it. (Doc. No. 45 ¶ 21.) The photograph is an altered image taken from the cover of a 2009 music album, the title of which was "Pissing on Your Grave." The version of the photograph posted on Facebook contained a "crudely integrated professional headshot of Sergeant Baker." (*Id.*) The plaintiff asserts that Sergeant Baker was a public figure and that the Meme was a political statement on a matter of public concern.

Defendant Crouch was offended by the Meme because it disrespected a deceased member of local law enforcement. He "demanded" that the TBI and "the other Defendants" conduct a criminal investigation in order to identify and arrest the person who posted the Meme.

The TBI defendants began their investigation by visiting Baker's gravesite, and they quickly realized that the image posted on Facebook did not actually depict Sergeant Baker's grave. Defendant Craig, even before visiting the gravesite, realized that the photograph was a photoshopped image. Thus, the TBI defendants understood from the outset that the image did not actually depict the desecration of Baker's grave and that no crime had been committed.

Despite having quickly reached that conclusion, the TBI nonetheless "launched a manhunt and issued an all-points bulletin" seeking the public's help in identifying the Meme's creator. The "tweets" issued by the TBI on its Twitter account, copies of which are included in the Amended Complaint, stated, for example, that Crouch had "requested the TBI to investigate the origin of a

troubling photograph" and that the agents visiting the gravesite had "quickly determined that the photograph is not authentic." (Doc. No. 45, at 9.)

Tips from citizens and the technical investigation conducted by defendant Vallee identified the plaintiff as the possible creator of the Meme. Based on a "constitutionally defective and facially invalid *Affidavit of Complaint*" signed by defendant Craig that "omitted essential, material information evidencing that no crime had been committed and also falsely asserted . . . that the Plaintiff's speech had criminally 'caused emotional distress to . . . the law enforcement officers from Dickson County'" (*id.* ¶ 52 (quoting Aff. of Compl., Doc. No. 1-3)), Garton was thereafter arrested, interrogated, charged with harassment, and booked into the Dickson County Jail. His bond was set at $76,000—an amount sufficiently high to ensure that Garton would not be able to immediately post bail and would stay incarcerated for an "extended period of time." (*Id.* ¶ 28.)

The Amended Complaint states that defendant Crouch "performed and directed investigative and administrative functions to facilitate and enable the Plaintiff's arrest without probable cause" that were "[u]nrelated to [his] preparation for the initiation of a prosecution or for judicial proceedings, and unconnected to the judicial process." (*Id.* ¶ 57.) Somewhat more specifically, Crouch is alleged to have "directed a search for clues and corroboration that would give him probable cause to recommend" the plaintiff's arrest, and he "played the role of an advocate against the Plaintiff before he had—and without ever requiring—probable cause to have the Plaintiff arrested." (*Id.*) Thus, the plaintiff claims, Crouch acted outside of his prosecutorial role and in violation of his professional ethical obligations. (*Id.* ¶ 58.)

The other defendants' correspondence regarding Garton's treatment reflects their actual knowledge that Garton's First Amendment rights had been violated and that Garton had a "right to post," but they nonetheless believed that Garton should suffer "consequences"—arrest and

prosecution—for disrespecting the police. (*Id.* ¶¶ 34, 35.)

After the plaintiff's arrest, the defendants allegedly "acted in concert" to prepare and issue a statement to the media regarding the arrest, which included the plaintiff's full name, mugshot, date of birth, a reference to unrelated criminal charges, and the fact that the "Defendants," collectively, had "secured a substantial bond that ensured the Plaintiff would be incarcerated for an extended time period." (*Id.* ¶ 38.)

On the heels of this announcement, the TBI began receiving requests from local and national news outlets asking the TBI to explain the justification for the plaintiff's arrest, which the TBI was unable to do. Instead, it "misleadingly deflected responsibility to Defendant Crouch," stating that the TBI agents, when requested by a District Attorney General to investigate an incident, merely act as "factfinders" and that the District Attorney General "determines what, if any, charges are placed." (*Id.* ¶ 42.)

According to the Amended Complaint, the plaintiff was the only person arrested in connection with the posting of the Meme, but he was not the only person to post the Meme. Other individuals who actually sent the Meme to members of Sergeant Baker's family were not investigated or arrested. (*Id.* ¶¶ 29, 82.) The plaintiff also asserts that "dozens—possibly hundreds—of other individuals posted the very same image" in social media, and the defendants were aware of that fact, but the only person arrested and charged with harassment was Garton. (*Id.* ¶¶ 83, 84.)

Garton was held in jail from January 22, 2021 through February 3, 2021, when he was able to appear before Dickson County General Sessions Judge Craig Monsue for a preliminary hearing. The plaintiff alleges that, during the hearing, defendant Joseph Craig "repeatedly admitted that the Plaintiff had not posted the meme at issue with an unlawful purpose"—a "threshold element of the

harassment charge." (*Id.* ¶ 44.) At the conclusion of the hearing, Judge Monsue "announced that the Court would dismiss the charge against the Plaintiff for lack of probable cause" (*id.* ¶ 45), and he thereafter issued a written order and judgment dismissing the harassment charge (Doc. No. 1-4). After the written order was issued, Garton was finally released from jail.

### C.      Procedural History

The plaintiff filed his original Complaint on April 27, 2021 and the Amended Complaint on August 17, 2021. Based on the factual allegations in the Amended Complaint, the plaintiff articulates causes of action against all defendants indiscriminately for (1) malicious prosecution under 42 U.S.C. § 1983 and Tennessee common law; (2) false arrest under § 1983 against all defendants, based on a facially invalid warrant obtained upon defendant Craig's materially false statements and omissions and at the direction of defendant Crouch and the other defendants; (3) First Amendment retaliation under § 1983; (4) denial of equal protection under § 1983; and (5) "Civil Conspiracy/Agency Liability." (Doc. No. 45.) The plaintiff separately brings a § 1983 claim against the City of Dickson arising from the violations of the plaintiff's constitutional rights, based on the City's alleged failure to train or supervise its employees to "prevent constitutional violations like those the Plaintiff suffered" and "fail[ure] to promulgate appropriate policies or procedures," both of which amount to deliberate indifference on the part of the City. (*Id.* ¶¶ 101, 104.)

The plaintiff seeks declaratory and injunctive relief against the City of Dickson and defendants Crouch and Rausch in their official capacities. In support of the claim for injunctive relief, the plaintiff states: "Upon information and belief, Defendant Crouch desires to re-prosecute the Plaintiff regarding this specific instance of protected speech and will seek his indictment via direct presentment in the absence of an injunction prohibiting him from doing so." (*Id.* ¶ 108.) The plaintiff alleges that defendant Crouch was asked through counsel to affirmatively disclaim future

investigation and prosecution of Garton regarding this matter, and he "expressly declined to do." (*Id.* ¶ 109.) He "harbors extreme personal animus toward the Plaintiff" and acted with bias toward him in directing the investigation against the plaintiff, because of his close ties with Sergeant Baker and his family. (*Id.* ¶ 110.)

Similarly, the plaintiff asserts that the TBI and City of Dickson "consider the investigation of the Plaintiff to be open and ongoing," as a result of which they have refused to release records that would otherwise be public. (*Id.* ¶ 111.) The plaintiff alleges "[u]pon information and belief," that defendant Rausch "will direct his agency's resources toward investigating the Plaintiff and anyone who expresses support for the Plaintiff if the Plaintiff again exercises his right to criticize law enforcement." (*Id.* ¶ 112.)

The plaintiff alleges that Rausch, in his official capacity as the Director of the TBI, "has demonstrated a clear and persistent pattern of failing to discipline" agents who engage in constitutional violations; has adopted policies that are "insufficient to protect the constitutional rights of individuals"; and "actively allows or participates in retaliation" against citizens who exercise their constitutional rights, as demonstrated by the actions of the individual TBI agents named as defendants in this case against the plaintiff. (*Id.* ¶ 113.)

Aside from declaratory and injunctive relief, the plaintiff also seeks compensatory damages and attorney's fees under 42 U.S.C. § 1988.

Following the filing of an initial round of motions to dismiss, the plaintiff requested, and was granted, leave to file the Amended Complaint in order to attempt to cure any jurisdictional deficiencies. The Amended Complaint was greeted by another round of Motions to Dismiss, as identified above (Doc. Nos. 46, 49, 51), each of which is supported by a Memorandum of Law (Doc. Nos. 47, 50, 52). The plaintiff filed an omnibus Response to all three motions (Doc. No. 55);

the City defendants and Crouch filed Reply briefs (Doc. Nos. 56, 57).

## II. THE MOTIONS TO DISMISS FOR LACK OF JURISDICTION

All three motions seek dismissal of all claims, or at a minimum the plaintiff's First Amendment retaliation claim, for lack of subject-matter jurisdiction, on the basis that the claims are barred by the *Rooker-Feldman* doctrine.

Under 28 U.S.C. § 1257, "[f]inal judgments or decrees rendered by the highest court of a State . . . may be reviewed by the Supreme Court." Based on that limitation, the Sixth Circuit has succinctly explained the *Rooker-Feldman* doctrine as follows: "If the Supreme Court can review 'final judgments' from state courts of last resort, then lower federal courts can't. That negative inference is called the *Rooker-Feldman* doctrine." *RLR Invs., LLC v. City of Pigeon Forge*, 4 F.4th 380, 385 (6th Cir. 2021) (internal citation omitted), *rehearing en banc denied* (Aug. 12, 2021), *cert. denied sub nom. RLR Invs., LLC v. Pigeon Force*, No. 21-703, 2022 WL 145186 (U.S. Jan. 18, 2022).

In the "canonical" cases upon which the doctrine was premised, losing state-court litigants sought review of a final judgment issued by the state's highest court in federal district court instead of the United States Supreme Court. *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). The Supreme Court held that the district court lacked jurisdiction to hear such a case, because doing so would require it to exercise appellate jurisdiction over a state court decision, and the district courts have original jurisdiction only. *Rooker*, 263 U.S. at 416; 28 U.S.C. § 1331.

As the Sixth Circuit has explained, *Rooker* and *Feldman* represent the "easy cases," but the federal courts have expanded the principle to more complex situations. *RLR Invs.*, 4 F.4th at 385. Thus, for example, although *Rooker* and *Feldman* both involved cases in which the plaintiff sought review of a *final* judgment issued by a state's highest court, the Sixth Circuit has also held that the

doctrine applies when a litigant seeks review of a lower state court's interlocutory order. *See Pieper v. Am. Arb. Ass'n*, 336 F.3d 458, 460–62 (6th Cir. 2003) (holding that the *Rooker-Feldman* doctrine applied to bar a federal lawsuit in which the plaintiff sought a declaration that a state court order compelling arbitration was improper, because, irrespective of how the lawsuit was framed, the plaintiff in fact sought a reversal of the state court's order to compel arbitration from the district court, rather than appealing the order through the state system).

Following *Pieper*, the Supreme Court further clarified the doctrine, holding that *Rooker-Feldman* "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In *RLR Investments*, issued after *Exxon*, the Sixth Circuit reaffirmed its conclusion that the doctrine applies to cases brought in federal district court challenging state interlocutory orders. *See RLR Invs.*, 4 F.4th at 387 ( "*Exxon* and *Pieper* can comfortably coexist[.]"). There, the court reiterated that the *Rooker-Feldman* doctrine applies in "'[(1)] cases brought by state-court losers [(2)] complaining of injuries caused by state-court judgments [(3)] rendered before the district court proceedings commenced [(4)] and inviting district court review and rejection of those judgments.'" *Id.* (quoting *Exxon*, 544 U.S. at 284). While this guidance seems straightforward, the application of the doctrine may be complicated by the difficulty of determining whether the plaintiff seeks review of a state court decision and whether a state court decision actually counts as a judgment. *Id.* at 388.

No such difficulty is presented here, however, because the plaintiff was a state-court winner rather than a "state-court loser," and he does not complain of injuries caused by a state-court judgment. There was no judgment against him that he could possibly appeal. *See ASARCO, Inc. v.*

*Sec'y of Labor*, 206 F.3d 720, 722 (6th Cir. 2000) ("It is a well settled principle that a prevailing party cannot appeal an unfavorable aspect of a decision in its favor." (citation omitted)). It is clear, in other words, that the *Rooker-Feldman* doctrine simply does not apply in this case. Thus, insofar as the defendants' motions seek dismissal of any of the plaintiff's claims premised on the *Rooker-Feldman* doctrine, they are without merit. The court does not lack subject-matter jurisdiction over this dispute.

## III.    THE RULE 12(B)(6) ISSUES

### A.    Standard of Review

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss. *Id.*; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Moreover, factual allegations that are merely consistent with the defendant's liability do not satisfy the plaintiff's burden, as mere consistency does not establish plausibility of entitlement to relief, even if it supports the possibility of relief. *Iqbal*, 556 U.S. at 678. According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

Generally, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). At the same time, however, it has long been the rule that a court may consider, not only the Complaint and exhibits attached to it, but also exhibits attached to a defendant's motion to dismiss, "so long as they are referred to in the Complaint and are central to the claims contained therein." *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 694 (6th Cir. 2018) (citation omitted).

**B.      City of Dickson's and Donald Arnold's Motion to Dismiss**

*1.      Collateral Estoppel/Issue Preclusion*

In the alternative to their *Rooker-Feldman* doctrine argument, the City defendants argue that the plaintiff is barred by the doctrine of collateral estoppel from arguing that his speech—the posting of the Meme on Facebook—was protected by the First Amendment. This argument is premised upon the transcript of the preliminary hearing before Judge Monsue, which the defendants have filed in its entirety. (Doc. No. 12-1.) The City defendants argue that the plaintiff's First Amendment retaliation claim is barred by Judge Monsue's statement, in conducting the

preliminary hearing on the harassment charge against Garton, that he did not engage in speech protected under the First Amendment. (Doc. No. 52, at 6 (citing Doc. No. 12-1, at 134).)

To be clear, issue preclusion is not a jurisdictional issue—it is an affirmative defense that may be waived if not raised by a defendant. *Gilbert v. Ferry*, 413 F.3d 578, 579–80 (6th Cir. 2005). Because it is an affirmative defense, the defendant bears the burden of proving it. *Spilman v. Harley*, 656 F.2d 224, 229 (6th Cir. 1981). Moreover, as an affirmative defense, it is subject to the general rule that matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). At the same time, however, the court may consider documents attached to the pleadings, documents that are referred to in the pleadings and integral to the claims, and matters of judicial notice without converting the motion into one for summary judgment. *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001). Even if the plaintiff does not refer directly to documents in the pleadings, if those documents govern the plaintiff's rights and are necessarily incorporated by reference, then the court may consider the document without converting the motion into one for summary judgment. *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

In this case, the preliminary hearing transcript was not attached to the pleadings, and, although the preliminary hearing was referenced in the Amended Complaint, it is at least arguable that what happened *during* those proceedings—as opposed to what happened as a *result* of those proceedings (the dismissal of the charge against Garton)—is not integral to the plaintiff's claims and does not govern his rights. Regardless, it appears to be a document of which the court may take judicial notice under the Federal Rules of Evidence, as the existence of the transcript and its provenance "can be accurately and readily determined from sources whose accuracy cannot

reasonably be questioned." Fed. R. Evid. 201(b)(2); *accord Tutstone v. Garner*, No. 1:12CV2963, 2014 WL 991947, at *1 (N.D. Ohio Mar. 13, 2014) (finding the transcript of a motion to suppress in criminal proceedings to be "a public record," the contents of which the court could consider "for determining the fact that the hearing occurred, that certain issues were considered, that both sides were permitted to present evidence and cross examine witnesses and that the trial court denied the motion"), *aff'd*, No.14-3342 (6th Cir. Feb. 18, 2015); *Smith v. Maloon*, No. 2:09-CV-00954, 2010 WL 2761344, at *6 (S.D. Ohio July 13, 2010) (concluding that "state court proceedings, which are a matter of public record, meet Federal Rule of Evidence 201(b)'s criteria" for judicial notice). Accordingly, the court will take judicial notice of the transcript and the fact that Judge Monsue articulated, during the preliminary hearing, his finding that the photograph and caption Garton posted on Facebook was not speech protected by the First Amendment.

The mere taking of judicial notice of *what* Judge Monsue said does not equate to accepting the truth or validity of the statement. That is, the question remains whether that statement gives rise to issue preclusion, as the City defendants claim. Issue preclusion, also called collateral estoppel, "precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action." *Ga.-Pac. Consumer Prods. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012) (quoting *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 661 (6th Cir. 1990)). Generally, four requirements must be met before issue preclusion applies:

> (1) the precise issue must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Id.* (quoting *Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 589–90 (6th Cir. 2009)).

The City defendants argue that each of these factors is met, but it is abundantly clear from the record that they are not. First, as set forth above, Judge Monsue ultimately dismissed the harassment charge against the plaintiff based on a lack of probable cause. His finding that the defendant (plaintiff here) had not engaged in speech protected by the First Amendment was not necessary to that conclusion; instead, it was entirely incidental.

Second, it does not appear that the prior proceedings, particularly the finding regarding protected speech, resulted in a "final judgment on the merits." As Garton points out, under Tennessee law, the dismissal of a criminal charge at a preliminary hearing in a General Sessions court based on the absence of probable cause "does not preclude the state from instituting a subsequent prosecution for the same offense." Tenn. R. Crim. P. 5.1(c); *see also State v. McClellan*, No. W2020-00742-CCA-R3-CD, 2021 WL 4521355, at *3 (Tenn. Crim. App. Oct. 4, 2021) ("[A] probable cause determination of a general sessions court . . . is not a final determination for a criminal matter."); *State v. Lee*, No. W2015-01538-CCA-R3-CD, 2016 WL 6915582, at *16 (Tenn. Crim. App. Nov. 23, 2016) (noting that, "when the general sessions court dismisses a case following a preliminary hearing, a defendant is entitled to the recording of the preliminary hearing *in the event the defendant is later prosecuted for the same offense* through indictment or presentment" (citing Tenn. R. Crim. P. 5.1(c)) (emphasis added)).

And finally, because the criminal charge against Garton was dismissed for lack of probable cause, it is not at all clear that Garton had a "full and fair opportunity to litigate" the First Amendment issue. It is well settled, under both Tennessee and federal law, that a prevailing party cannot appeal "from a judgment or decision in his favor, for the purpose of obtaining a review of findings he deems erroneous which are not necessary to support the decree." *ASARCO, Inc. v. Sec'y of Labor*, 206 F.3d 720, 722 (6th Cir. 2000); *accord Massengill v. Massengill*, 255 S.W.2d

1018, 1019 (Tenn. Ct. App. 1952) ("It seems to be the rule generally that a litigant cannot appeal or prosecute a writ of error from a decree or judgment in his favor, since he is not aggrieved thereby."). Because he could not appeal the order entered in his favor, Garton had no opportunity to challenge, on appeal, the General Sessions judge's conclusion that he had not engaged in protected speech.

The court finds, therefore, that the plaintiff's § 1983 claim premised on an alleged First Amendment violation is not barred by collateral estoppel/issue preclusion.

### 2. Failure to State a Claim

In the alternative, the City defendants move to dismiss the claims against them for failure to state a claim for which relief may be granted. They argue that the Amended Complaint fails to plead any specific facts implicating Donald Arnold and, instead, impermissibly utilizes a practice of "group pleading" to assert the claims in the Amended Complaint against all defendants generally. They also argue that the Amended Complaint fails to allege that a City official with authority to act as a final decision-maker on behalf of the City took any illegal action on behalf of the City or ratified illegal actions by a City employee and that the pleading also fails to allege any other facts that would support municipal liability under § 1983. In response, the plaintiff asserts that the allegations directly implicating Arnold and the City are sufficient to state colorable claims.

### a) Group Pleading and the Allegations Implicating Defendant Arnold

To maintain an action under 42 U.S.C. § 1983, a plaintiff must demonstrate two elements: (1) that the alleged conduct was committed by a person acting under color of state law; and (2) that this conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Graham v. NCAA*, 804 F.2d 953, 957 (6th Cir. 1986) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). Moreover, "[w]hen claiming damages for violations of constitutional rights, [p]laintiffs 'must allege, with particularity, facts that

demonstrate what *each* defendant did to violate the asserted constitutional right.'" *Ondo v. City of Cleveland*, 795 F.3d 597, 610 (6th Cir. 2015) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (emphasis in original)); *see also McKenna v. Bowling Green State Univ.*, 568 F. App'x 450, 460 (6th Cir. 2014) ("Simply put, to establish liability . . . , an individual must show that his or her *own* rights were violated, and that the violation was committed *personally* by the defendant." (quotation marks and citation omitted) (emphasis in original)). Therefore, to establish § 1983 liability against a person in his individual capacity, the plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Based on this principle, district courts within the Sixth Circuit, and within this district specifically, have uniformly held that "group pleading" does not suffice to state colorable claims against individuals. *See, e.g.*, *Mhoon v. Metro. Gov't*, No. 3:16-cv-01751, 2016 WL 6250379, at *3 (M.D. Tenn. Oct. 26, 2016) (Campbell, J.) ("Plaintiff typically uses a generic reference to 'Defendants,' without specifying which Defendants were involved, even where it is clear that not all of them could have been involved. . . . This form of group pleading is insufficient to establish that any one of [the] Fiddler Defendants was deliberately indifferent to Plaintiff's serious medical needs."); *Rodriguez v. Providence Cmty. Corrs., Inc.*, 3:15-CV-01048, 2016 WL 3351944, at *11 (M.D. Tenn. June 9, 2016) (Sharp, C.J.) ("A complaint that fails to impute concrete acts to specific litigants . . . fails to state a plausible claim." (internal quotation marks and citations omitted)); *DeSoto v. Bd. of Parks & Recreation*, 64 F. Supp. 3d 1070, 1087 (M.D. Tenn. 2014) (Trauger, J.) ("Here, [the] Amended Complaint in general alleges claims against 'the defendants,' without specifying which defendants are the actual target of certain claims, what actions those defendants allegedly took related to that particular claim, and why those actions could support a given

claim."")); *accord Robertson v. Univ. of Akron Sch. of Law*, No. 5:20-CV-1907, 2021 WL 3709915, at *5 (N.D. Ohio Aug. 20, 2021) (finding the complaint's group pleading allegations "insufficient to demonstrate that each individual defendant was personally involved in the alleged constitutional deprivations").

The Amended Complaint generally alleges that the defendants, collectively, arrested, charged, and jailed Garton on a "bogus criminal charge," while knowing that they lacked probable cause to arrest him in the first place. (Doc. No. 45 ¶ 4.) In terms of allegations specifically directed against Arnold, however, the Amended Complaint alleges that, although the "Defendants," "individually and collectively, lacked probable cause to institute criminal process" against Garton, TBI employees, "working alongside investigators from the Defendant City of Dickson's Police Department, including Defendant Arnold, 'arrested and charged' the Plaintiff." (*Id.* ¶ 51.) Thereafter, the TBI issued a press release announcing the arrest and "emphasiz[ing] the joint involvement of both law enforcement agencies." (*Id.*) The Amended Complaint, construed broadly, may be interpreted as suggesting that Arnold participated in the investigation into the posting of the Facebook Meme, but it does not indicate that Arnold provided false information or engaged in any conduct that could be deemed to violate the plaintiff's constitutional rights. Other than the vague reference to his "working alongside" the TBI officers who actually conducted the arrest, the Amended Complaint does not allege Arnold's personal involvement in the swearing out the Affidavit of Complaint, effecting the arrest, or instituting criminal proceedings against Garton. It does not allege any overt act by Arnold to establish his liability under § 1983 or his participation in a § 1983 conspiracy.

The Amended Complaint includes some screenshots of after-the-fact texts allegedly sent by defendant Arnold that supposedly "admit" that "they," meaning "law enforcement," had

violated Garton's First Amendment rights and that, although Garton had the "right to post," that "doesn't mean there are no consequences." (*Id.* ¶ 34.) The sending of text messages after the plaintiff had already been arrested does not, however, give rise to liability under § 1983. Moreover, while these text messages may be construed as showing Arnold's favorable view of the plaintiff's arrest, they do not establish his involvement in any allegedly unconstitutional conduct.

The Amended Complaint, in sum, does not show that Arnold, "through [his] own individual actions, has violated the constitution." *Iqbal*, 556 U.S. at 676. The group pleading and conclusory assertions are not sufficient to state a colorable claim of any kind. The court, therefore, finds that the Amended Complaint fails to state a claim against Arnold under § 1983 or state common law. The Motion to Dismiss seeking dismissal of the claims against Arnold will be granted.

### b) Municipal Liability Claim Against the City of Dickson

A municipality, unlike a state, is not entitled to sovereign immunity and is considered a legal "person" that may be subject to liability under 42 U.S.C. § 1983. A municipality, however, is not subject to *respondeat superior* liability for the actions of its employees. Rather, the plaintiff suing a municipal entity under § 1983 must show that his injury was caused by a municipal policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). This requirement applies whether the plaintiff seeks monetary damages or prospective relief in the form of an injunction or declaratory judgment. *Los Angeles Cty. v. Humphries*, 562 U.S. 29, 30 (2010).

To show that the municipality itself is to blame for the unconstitutional acts of its employees, the plaintiff must show that the City adopted or ratified a policy or custom that caused the harm inflicted by its officers or employees. *See Monell*, 436 U.S. at 694 (stating that "the government as an entity is responsible under § 1983" only "when execution of a government's policy or custom . . . inflicts the injury"). Proving this requires a plaintiff to "point to a municipal

'policy or custom' and show that it was the 'moving force' behind the constitutional violation."
*Crabbs v. Scott*, 800 F. App'x 332, 336 (6th Cir. 2020) (quoting *Monell*, 436 U.S. at 694). The
pleadings must set forth the specific policy or custom allegedly adopted by the government—for
instance, by pointing to "(1) the municipality's legislative enactments or official agency policies;
(2) actions taken by officials with final decision-making authority; (3) a policy of inadequate
training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations."
*Jones v. Clark Cty.*, 959 F.3d 748, 761 (6th Cir. 2020) (quoting *Thomas v. City of Chattanooga*,
398 F.3d 426, 429 (6th Cir. 2005)).

The third route—establishing municipal liability through a policy of inadequate training or
supervision—requires the plaintiff to show that: "(1) the 'training program was inadequate for the
tasks that officers must perform; (2) the inadequacy was the result of the City's deliberate
indifference; and (3) the inadequacy was closely related to or actually caused the injury.'" *Jackson
v. City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019) (quoting *Ciminillo v. Streicher*, 434 F.3d
461, 469 (6th Cir. 2006)). "Deliberate indifference" imposes "a stringent standard of fault,
requiring proof that a municipal actor disregarded a known or obvious consequence of his actions."
*Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). For purposes of avoiding dismissal under
Rule 12(b)(6), a pleading must indicate a "risk of a constitutional violation arising as a result of"
the inadequate training that is "plainly obvious." *Gregory v. City of Louisville*, 444 F.3d 725, 752
(6th Cir. 2006). To make that showing, a plaintiff must allege either "prior instances of
unconstitutional conduct demonstrating that the City had notice that the training was deficient and
likely to cause injury but ignored it" or "evidence of a single violation of federal rights,
accompanied by a showing that the City had failed to train its employees to handle recurring
situations presenting an obvious potential for such a violation." *Campbell v. City of Springboro*,

700 F.3d 779, 794 (6th Cir. 2012). Mere allegations of an officer's inadequate training or alleging that an injury could have been avoided with better training will not make out a claim of deliberate indifference. *Harvey v. Campbell Cty.*, 453 F. App'x 557, 563 (6th Cir. 2011).

In this case, the plaintiff's claim against the City is premised upon allegations that the City, "acting by and through its policymakers, officers, and agents, including Defendant Arnold . . . , violated the Plaintiff's clearly established rights secured by the First and Fourteenth Amendments to the United States Constitution." (Doc. No. 45 ¶ 97.) The plaintiff asserts both that the City had unconstitutional policies and customs and that its failure to adequately train its police officers was the product of the City's deliberate indifference to the likelihood that the failure to train would result in constitutional violations. The factual allegations in the Amended Complaint, however, largely consist of legal assertions masquerading as statements of fact. For example, the plaintiff states:

> 101. The City of Dickson fails to train or supervise its employees to prevent constitutional violations like those the Plaintiff suffered, it has knowingly misrepresented its involvement in the constitutional violations that the Plaintiff suffered, and it provides training and supervision that is inadequate to prevent such violations from recurring.

> 102. The City of Dickson's inadequate training is a result of the City of Dickson's deliberate indifference to federal constitutional rights. For example, the text message exchange between two Defendants explicitly stating that even though the Plaintiff exercised his First Amendment rights, he could still be subject to "consequences"—up to and including prosecution and incarceration at the hands of the state—indicates a lack of understanding of the very nature of the First Amendment. Coupled with the City of Dickson's and its employees' repeated violations of the Plaintiff's and other citizens' First Amendment rights and its knowing misrepresentations regarding the underlying role that the City of Dickson and its employees had in the Plaintiff's arrest and prosecution, this demonstrates a widespread pattern of ignorance of or deliberate indifference to the First Amendment, indicating a widespread failure of training.

> 103. The City of Dickson's inadequate training was closely related to or actually caused the Plaintiff's injury.

104. The City of Dickson has failed to promulgate appropriate policies or procedures or take other measures to prevent violations of the First Amendment by its employees, agents, or officers, and upon information and belief, no employee involved in the Plaintiff's false arrest, malicious prosecution, or unconstitutional retaliation, including Defendant Arnold, has been disciplined for misconduct.

(Doc. No. 45 ¶¶ 101–04.) These assertions, for the most part, are not facts. They are conclusions.

In this case, there are no specific allegations in the Amended Complaint that would support a claim based on official or unofficial City policy, and there are no allegations establishing that Arnold, as a Captain in the Dickson Police Department, is an official with final decision-making authority for the City or that he took any particular action or ratified any unconstitutional action by other City employees. Likewise, the plaintiff alleges no facts to support a claim based on a failure to train arising from deliberate indifference. And even if the Amended Complaint could be construed as stating claims against Arnold individually, his potential liability, standing alone, would not establish a failure-to-train or unconstitutional-policy claim against the City. The claims against the City will be dismissed for failure to state a claim for which relief may be granted.

The joint Motion to Dismiss filed by Arnold and the City of Dickson will be granted in its entirety.

## C. The TBI Defendants' Motion to Dismiss

Defendants Bradley Nealon, Russell Winkler, Joshua Melton, Joseph Craig, Andrew Vallee, and David Rausch collectively seek dismissal of the claims against them under Rule 12(b)(6), for failure to state a claim upon which relief can be granted.

### 1. *Defendants Nealon, Winkler, and Melton*

As set forth above, a plaintiff pursuing liability under § 1983 must allege and prove that each defendant was personally involved in the alleged unconstitutional activity set forth in the complaint and point to some causal connection between the misconduct complained of and the official sued. *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984); *Dunn v. Tennessee*, 697 F.2d

121, 128 (6th Cir. 1983). As discussed in connection with the City defendants' Motion to Dismiss, the Amended Complaint engages in group pleading. Although the plaintiff asserts broadly that all of the defendants were involved in his false arrest and malicious prosecution, it contains no specific facts—and in fact, no mention at all—of defendants Nealon, Winkler, and Melton, aside from the paragraphs introducing them, stating their TBI titles, and asserting "upon information and belief," based solely on their job titles, that they "participated in the Defendants' investigation of, false arrest of, malicious prosecution of, and unconstitutional retaliation against Mr. Garton." (Doc. No. 45 ¶¶ 8–10.)

The sole exception is that, in a single paragraph later in the Amended Complaint, the plaintiff asserts that "employees and agents" of the TBI, including Nealon, Winkler, and Melton among all the other "defendants," "arrested and charged" the plaintiff. (*Id.* ¶ 51.) The plaintiff does not allege that any of these defendants was involved in swearing out the Affidavit of Complaint or obtaining the arrest warrant, nor does he provide any facts that would establish their knowledge of the absence of probable cause for the arrest or their participation in the decision to bring criminal charges against him. The plaintiff does not allege that any of these defendants provided any information to defendant Craig that was used in the Affidavit of Complaint when Craig sought the arrest warrant—much less that they intentionally misrepresented or omitted relevant information. The Amended Complaint fails to state a claim for false arrest against these three defendants.

A malicious prosecution claim requires the plaintiff to show, among other elements, that the particular defendant made, influenced, or participated in the prosecution decision. *Miller v. Maddox*, 866 F.3d 386, 389 (6th Cir. 2017); *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010). The Amended Complaint contains no facts to support the conclusion that these defendants made, influenced, or participated in the prosecution decision or that they provided any testimony—

much less false testimony—to obtain the arrest warrant or at Garton's probable cause hearing. The Amended Complaint fails to state a malicious prosecution claim against these defendants.

The Amended Complaint does not allege any overt action by any of these defendants to establish their involvement in any conspiracy and, for the same reasons, also fails to state a claim against them based on their purported violation of the plaintiff's right to equal protection under the Fourteenth Amendment.

In sum, the TBI defendants' Motion to Dismiss will be granted, insofar as it seeks dismissal of the claims against defendants Nealon, Winkler, and Melton.

### 2. *Defendant Vallee*

Defendant Andrew Vallee is a Special Agent with the TBI assigned to the Technical Services Unit. (Doc. No. 45 ¶ 12.) Vallee's involvement in the events giving rise to the plaintiff's claims included conducting a technical investigation that helped the TBI identify Garton as "the individual possibly responsible for the posting" of the Meme. (*Id.* ¶ 27.) Vallee is not alleged to have provided false information in support of obtaining the arrest warrant, and he was not involved in swearing out the Affidavit of Complaint. However, the Affidavit of Complaint, filed with the plaintiff's original pleading, states that Vallee accompanied defendant Craig to the gravesite and, along with Craig, verified that the Meme was photoshopped. In addition, he and Craig together interviewed Garton, and he was present when Garton was arrested and charged with harassment. Because Vallee is alleged to have been involved in the arrest and participated in the decision to prosecute, with alleged knowledge that the charge against Garton was not based on probable cause, the court finds that the Amended Complaint, just barely, states colorable claims against Vallee for false arrest and malicious prosecution. In addition, the same conduct supports the First Amendment retaliation claim, and the alleged collaboration between Craig, Vallee, and Crouch discussed herein supports the existence of a civil conspiracy to violate the plaintiff's constitutional rights.

The TBI defendants' motion will be denied as to the claims against Vallee, except for the equal protection claim, which, as discussed below, will be dismissed in its entirety.

### 3.     *Defendant Rausch*

Defendant Rausch is the current Director of the TBI, a statewide law enforcement agency. (Doc. No. 45 ¶ 7.) He is sued in both his individual and official capacity. The official-capacity claim is addressed below, in conjunction with the official-capacity claim against Crouch. The individual-capacity claim against him is based on the same paragraph that includes the name of every other TBI defendant, which alleges that "agents and employees" of the TBI, including Rausch, "arrested and charged" the plaintiff. For the same reasons as set forth above, in connection with the same allegation against Nealon, Winkler, and Melton, the court finds that the Amended Complaint fails to state a claim against Rausch in his individual capacity.

The claims against Rausch in his individual capacity will be dismissed for failure to state a claim for which relief may be granted.

### 4.     *Defendant Craig*

#### a)     *Claims Related to Alleged False Arrest and Malicious Prosecution*

The plaintiff alleges that defendant Craig is a TBI Assistant Special Agent in Charge (Doc. No. 45 ¶ 11), was personally involved in the investigation of the Meme and the plaintiff's activities in connection with it, personally knew that the Meme's image was photoshopped, and swore out the Affidavit of Complaint that contained materially and intentionally false and misleading statements. (*Id.* ¶¶ 23, 42, 45, 52.) Specifically, the plaintiff alleges that Craig falsely swore in the Affidavit of Complaint that the Meme had "caused emotional distress to . . . law enforcement officers from Dickson County." (*Id.* ¶ 52.) Garton alleges that he was arrested based on a "facially invalid warrant that was premised upon Defendant Craig's materially false statements and/or

material omissions." (*Id.* ¶ 62.) He alleges that Craig, acting in concert with and at the direction of defendant Ray Crouch, the District Attorney General, arrested the plaintiff without probable cause.

Based on all of these allegations, the court finds that the Amended Complaint states colorable claims against Craig individually for false arrest and malicious prosecution, in that he allegedly made false statements in support of the arrest warrant and participated in the decision to prosecute. These same actions support the First Amendment retaliation claim, and the alleged collaboration between Craig, Vallee, and Crouch supports the existence of a civil conspiracy to violate the plaintiff's constitutional rights. The TBI defendants' Motion to Dismiss will be denied, insofar as it seeks the dismissal of these claims against Craig.

### b) Equal Protection Claim

The TBI defendants also seek dismissal of the equal protection claim for failure of the Amended Complaint to state a claim for which relief may be granted.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The clause "embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 299 (6th Cir. 2006)). More specifically, the plaintiff must "make a plausible allegation that similarly situated . . . individuals, *of a different political viewpoint*, have not been subject to the same alleged treatment by Defendants." *Id.* (citing *Nali v. Ekman*, 355 F. App'x 909, 913 (6th Cir. 2009)) (emphasis added). The "threshold element of an

equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers." *Id.* (quoting *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006)).

In this case, the TBI defendants characterize the plaintiff's equal protection claim as a "class of one" claim and argue that, because the plaintiff alleges that he created the Meme while others simply reposted it, he has not shown that he was actually similarly situated to individuals who merely reposted the same Meme: "However, in this case Plaintiff not only posted the image, he created it. Therefore, he has failed to show that he was treated differently than other similarly situated individuals, as the amended complaint makes no allegation that other individuals created and disseminated similar images but were not investigated and prosecuted." (Doc. No. 50, at 8.)

The plaintiff argues that the defendants' description of his claim as a "class of one" equal protection claim is "materially incomplete," as it ignores the plaintiff's assertion that he was treated disparately "based on the Plaintiff's viewpoint and his exercise of fundamental First Amendment rights." (Doc. No. 55, at 16.) He argues that, because the defendants' motion does not address this theory of recovery, the claim "necessarily survives the Defendants' motions to dismiss it." (Doc. No. 55, at 16.) The plaintiff also attempts to counter the TBI defendants' argument by pointing out that the Amended Complaint does not allege that he was investigated, arrested, and charged because he "created" the Meme; rather, the pleading alleges that Garton was investigated, arrested, and charged for "posting" the image, as the Affidavit of Complaint itself makes clear. (Doc. No. 55, at 18 (citing Doc. No. 1-3).) As a result, the plaintiff contends, he has adequately alleged that the defendants' "animus-based disparate treatment of [him] lacked any rational basis." (*Id.*)

The threshold inquiry, however, is whether the plaintiff has adequately alleged disparate treatment. In the absence of that element, reviewing courts do not reach the question of whether

such disparate treatment "burdens a fundamental right, targets a suspect class," or is targeted against the plaintiff as a "class of one" without a rational basis. *Ctr. for Bio-Ethical Reform*, 648 F.3d at 379. Regarding disparate treatment, Garton alleges as follows:

> 82. The Plaintiff was not the only person to post the image that resulted in the Plaintiff's investigation, arrest, and prosecution.
>
> 83. Instead, dozens—possibly hundreds—of other individuals posted the very same image, and the Defendants were actually aware of that fact.
>
> 84. Even though similarly situated individuals posted the same image as the Plaintiff on social media, no similarly situated individual who posted the same image at issue was arrested or prosecuted for doing so.
>
> 85. Similarly situated individuals who posted the same image at issue were not subject to the same treatment the Plaintiff received because their posting of the image at issue expressed a different viewpoint than the Plaintiff had expressed.
>
> 86. The Defendants treated the Plaintiff disparately as compared to similarly situated persons, and such disparate treatment burdened the Plaintiff's fundamental and clearly established First Amendment rights.
>
> 87. The Defendants treated the Plaintiff disparately as compared to similarly situated persons, and such disparate treatment had no rational basis.

(Doc. No. 45 ¶¶ 82–87.) The body of the Amended Complaint does not contain any additional facts to support the assertion that "similarly situated" individuals posted the Meme.

Moreover, the plaintiff never explains what "different viewpoint" was held by the other individuals who posted the Meme. The plaintiff claims that, although the Meme received "heavy attention," was "recirculated on social media by at least dozens of other individuals," and was even sent to members of Sergeant Baker's family, "because the Plaintiff was the creator of the meme at issue and the person who was responsible for its anti-law enforcement message, the Defendants singularly targeted, falsely arrested, and maliciously prosecuted the Plaintiff alone," because of his expression of the anti-law-enforcement viewpoint. (*Id.* ¶ 29.)

The plaintiff's conclusory, unadorned assertions that he was treated differently from "similarly situated individuals" "are not well-pleaded, and not entitled to a presumption of truth at this stage in the litigation." *Ctr. for Bio-Ethical Reform*, 648 F.3d at 379. The Amended Complaint "fails to make a plausible allegation that similarly situated . . . individuals, of a different political viewpoint, have not been subject to the same alleged treatment by Defendants." *Id.* (citing *Nali v. Ekman*, 355 F. App'x 909, 913 (6th Cir. 2009) (stating that allegations of discriminatory intent based on race must be "accompanied by some evidence that the people not disciplined were similarly situated and of a different race"). Because he created the Meme, the plaintiff is not similarly situated to others who simply reposted it. In addition, he never actually identifies any of the other reposters, nor does he identify what possible "different political viewpoint" those individuals had from the viewpoint he expressed by creating and posting it. *Accord Center for Bio-Ethical Reform*, 648 F.3d at 379. Indeed, the court cannot imagine what that different viewpoint could be.

The court finds that the Amended Complaint fails to plausibly allege the existence of "similarly situated" others, that he was treated disparately from such similarly situated individuals based on his creation and posting of the Meme, or that he was treated differently from individuals with a different viewpoint. The equal protection claim, as to all defendants, is subject to dismissal for failure to state a claim for which relief may be granted.

### D.    Defendant Crouch's Motion to Dismiss

Aside from arguing that the claims against him are barred by the *Rooker-Feldman* doctrine, District Attorney General Crouch argues that he is entitled to absolute prosecutorial immunity from all of the claims asserted against him. In the alternative, he argues that: (1) the Amended Complaint fails to state a colorable claim against Crouch in his individual capacity for false arrest, because there are no allegations that he was personally involved in executing the Affidavit of

Complaint, executing the arrest warrant, or participating in Garton's arrest; (2) the Amended Complaint fails to state a civil conspiracy claim for false arrest under § 1983; (3) the Amended Complaint fails to provide a legitimate basis for injunctive or declaratory relief against Crouch in his official capacity.

### 1. Absolute Prosecutorial Immunity

The law is clear that prosecutors are absolutely immune from liability under § 1983 for conduct that is "intimately associated with the judicial phase of the criminal process," including "initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430, 431 (1976). Tennessee grants the same prosecutorial immunity for state-law malicious prosecution claims. *See Shell v. State*, 893 S.W.2d 416, 421 (Tenn. 1995) ("[I]t is settled that prosecutors are immune from actions for malicious prosecution under both § 1983 and state common law." (internal citations omitted)). Such absolute liability encompasses even the knowing use of false testimony at trials and other court hearings, as well as the deliberate suppression of exculpatory evidence. *Imbler*, 424 U.S. at 413, 432–33; *Burns v. Reed*, 500 U.S. 478, 486 (1991). The Supreme Court employs a "functional approach" to determine when a prosecutor is acting within the scope of his duties as a prosecutor and when he is merely giving legal advice or investigating. *Id.*; *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). "[T]he critical inquiry is how closely related is the prosecutor's challenged activity to his role as an advocate intimately associated with the judicial phase of the criminal process." *Howell v. Sanders*, 668 F.3d 344, 349 (6th Cir. 2012) (quoting *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir. 1997)). The party seeking the benefit of absolute immunity has the burden of establishing it. *Burns*, 500 U.S. at 486.

The Sixth Circuit has explained that the "dividing line is not . . . the point of determination of probable cause. Instead, the dividing line is the point at which the prosecutor performs functions that are intimately associated with the judicial phase of the criminal process." *Howell*, 668 F.3d at

350 (quoting *Prince v. Hicks*, 198 F.3d 607, 614 (6th Cir. 1999)). Thus, for example, a "prosecutor who conducts investigative work following a finding of probable cause is not entitled to absolute immunity," while "a prosecutor who maliciously institutes a false prosecution with no probable cause is entitled to absolute immunity." *Id.* In either situation, "the inquiry remains one of function." *Id.* For tasks other than those "intimately associated with the judicial phase of the criminal process," including the "initiation and pursuit of a criminal prosecution," prosecutors are entitled to qualified immunity rather than absolute immunity. *Buckley*, 509 U.S. at 269–70, 273.

In this case, the Amended Complaint claims that the defendants responsible for Garton's arrest had "actual knowledge . . . that the photograph . . . posted on Facebook was fake" but, "[a]t the urging of Defendant W. Ray Crouch" arrested Garton and took him into custody anyway.[1] (Doc. No. 45 ¶ 2.) The plaintiff asserts that Crouch "direct[ed] law enforcement to investigate, retaliate against, arrest and charge Mr. Garton because he had disrespected law enforcement." (*Id.* ¶ 6.) In terms of actual specific factual allegations, the plaintiff asserts that Crouch "demanded" that the TBI "and the other Defendants" investigate the posting of the Meme and that such investigation was undertaken "at the direction of Defendant Crouch." (*Id.* ¶ 22.) The Amended Complaint then alleges, very generally, that, after identifying Garton as the individual responsible for posting the Meme, "the Defendants," collectively, located, interrogated, and charged the plaintiff, booked him into the Dickson County Jail, and "ensured" that his bond was set at a punitively high level so that he would remain incarcerated until his preliminary hearing. (*Id.* ¶ 28.)

---

[1] The court observes that the plaintiff's repeated assertions that all the defendants knew the Meme had been doctored and did not actually depict Sergeant Baker's gravestone is somewhat of a red herring, because the plaintiff was not arrested and charged with desecrating a grave. Rather, he was charged with harassment in violation of Tenn. Code Ann. § 39-17-308. (*See* Aff. of Compl., Doc. No. 1-3.)

The plaintiff alleges that the defendants, collectively, did not have probable cause to arrest him and knew that they did not have probable cause. (*Id.* ¶ 29.)

Under the "Causes of Action" section of the Amended Complaint and specifically in support of the malicious prosecution claims, under § 1983 and state law, the plaintiff alleges again that the defendants acted "in concert" to arrest the plaintiff without probable cause and to "wrongfully initiate[] legal process against him," that "[p]ublic records confirm that all Defendants made, influenced, or specifically participated in the decision to investigate, arrest, and/or charge the Plaintiff; that the Defendants acted in concert with one another to ensure that the Plaintiff was investigated, charged, and maliciously prosecuted for his speech; and that all Defendants were continuously apprised of the status of the Plaintiff's case at all stages of his proceedings." (*Id.* ¶¶ 49, 50.) The only mentions of Crouch in the section outlining the facts asserted in support of the malicious prosecution claim appear in the last two paragraphs devoted to this cause of action, which state in relevant part:

> 57. Unrelated to Defendant Crouch's preparation for the initiation of a prosecution or for judicial proceedings, and unconnected to the judicial process, Defendant Crouch performed and directed investigative and administrative functions to facilitate and enable the Plaintiff's arrest without probable cause; he directed a search for clues and corroboration that would give him probable cause to recommend that the Plaintiff be arrested; and he played the role of an advocate against the Plaintiff before he had—and without ever acquiring—probable cause to have the Plaintiff arrested.

> 58. In so doing, Defendant Crouch acted independent of his prosecutorial role as a District Attorney and, separately, in violation of his professional ethical obligations, among other things, to refrain from abusing the legal process, to avoid acting in "knowing disregard of obligations," and to avoid engaging in "a systematic abuse of prosecutorial discretion." Defendant Crouch did so because he is incapable of acting neutrally, constitutionally, and without bias where Sgt. Baker and his family are concerned

(Doc. No. 45 ¶¶ 57–58.)

These allegations are "incorporated by reference" into the other causes of action set forth in the Amended Complaint, including the false arrest claim, under which the plaintiff also asserts that he was arrested at the "Defendants' behest and direction based on a facially invalid warrant" (*id.* ¶ 62), but Crouch's name is not specifically mentioned again.

In support of his Motion to Dismiss, Crouch argues broadly that he is entitled to absolute immunity, because "[a]ll of Plaintiff's allegations against General Crouch relate to and concern his role as the prosecutor of the criminal action against Plaintiff to include investigation and preparation for the initiation of a prosecution or for the judicial process." (Doc. No. 47, at 9.) He argues that the false arrest claim does not pertain to him because he is not alleged to have signed the Affidavit of Complaint or the arrest warrant or to have personally participated in the arrest. (*Id.* at 10.) He specifically asserts that the decision to prosecute is a "core prosecutorial function" (*id.* at 9–10) and that his initiation of "criminal proceedings by ordering Plaintiff's arrest pursuant to [a] validly issued warrant" falls squarely within the scope of his prosecutorial functions (*id.* at 12). Likewise, he argues that, insofar as the equal protection claim is premised upon Crouch's decision to prosecute him but not others for the same conduct, he is entitled to absolute immunity, because his motives in choosing to prosecute are irrelevant. In response to Crouch's motion, the plaintiff points to the paragraphs of the Amended Complaint quoted in full above, in which the plaintiff specifically asserts that Crouch's actions were "[u]nrelated" to his prosecutorial duties and "unconnected to the judicial process. (*See* Doc. No. 55, at 9 (quoting Doc. No. 45 ¶ 57).)

The problem with the plaintiff's position is that asserting, in an entirely conclusory fashion, that Crouch was not acting within the scope of his role as an advocate is not the same thing as alleging actual facts to show that he was not engaged in "prosecutorial" functions. At the same time, the law is clear that actions taken by a prosecutor "before any probable cause hearing" and

"before a warrant was sought"—that is, acts that occur prior to the establishment of probable cause—are typically sufficiently "divorced from the judicial phase of the criminal process" to be deemed investigative rather than prosecutorial. *Watkins v. Healy*, 986 F.3d 648, 662 (6th Cir. 2021), *as corrected on denial of reh'g en banc* (Mar. 16, 2021) (citations and internal quotation marks omitted), *cert. denie*d, 142 S. Ct. 348 (2021); *see also Zahrey v. Coffey*, 221 F.3d 342, 347 n.2 (2d Cir. 2000) ("The majority opinion in *Buckley* . . . suggests that a prosecutor's conduct prior to the establishment of probable cause should be considered investigative: 'A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested.'" (quoting *Buckley*, 509 U.S. at 274)).

The only concrete actions allegedly taken by Crouch prior to the plaintiff's arrest are that Crouch requested (or "demanded") that the TBI and the "other Defendants" conduct a criminal investigation into the posting of the Meme. (Doc. No. 45 ¶ 22.) He then ordered law enforcement officers to arrest and charge Garton.

The court finds that Crouch is not entitled to absolute immunity for allegedly ordering the TBI to investigate the posting of the Meme. Instead, he is entitled only to qualified immunity for actions taken prior to the institution of legal proceedings. *See Buckley*, 509 U.S. 273. And, at this juncture, Crouch has not argued that he is entitled to qualified immunity. In addition, insofar as the plaintiff's claims are premised upon the allegation that Crouch directed the TBI to arrest Garton, Sixth Circuit precedent regarding whether absolute immunity attaches to that function is equivocal. In *Howell v. Sanders*, the plaintiff similarly alleged that the state prosecutor "was not acting as an advocate when he commanded the police to arrest her." 668 F.3d at 351. The Sixth Circuit, reviewing summary judgment for a state prosecutor, noted that it had previously, under "very different circumstances," held that "commanding an arrest is investigatory." *Id.* (citing

*Harris v. Bornhorst*, 513 F.3d 503, 510–11 (6th Cir. 2008)). As the court explained, *Harris* appeared at first blush to support the plaintiff's position in *Howell*. However, in the earlier case, the prosecutor had "independently decided that probable cause existed upon watching a confession that was blatantly coercive and on that basis alone ordered the suspect's arrest." *Howell*, 668 F.3d at 351. In *Howell*, "in contrast, a state judge made the determination that probable cause existed upon a complaint and affidavit filed by the investigating officer, and the prosecutor initiated the criminal proceedings by ordering the suspect's arrest pursuant to the validly issued warrant." *Id.* In light of the differences between the cases, the court saw "no reason to hold as a blanket rule that commanding the arrest of a suspect is *per se* outside the scope of a prosecutor's role as an advocate, particularly when, as here, the instruction follows the issuance of a valid arrest warrant by a neutral judge and is supported by probable cause." *Id.* at 351–52 (citing *Ireland*, 113 F.3d at 1446 ("A prosecutor's decision to file a criminal complaint and seek an arrest warrant . . . fall[s] squarely within the aegis of absolute prosecutorial immunity.").

The case here falls somewhere between *Harris* and *Howell*: the plaintiff does not allege that Crouch independently determined that probable cause existed and ordered Garton's arrest on the strength of that determination. However, the plaintiff does allege that probable cause to arrest him was lacking and that Crouch actually knew that probable cause was absent (Doc. No. 45 ¶ 29), despite the probable cause determination made by the neutral magistrate to whom TBI Agent Craig submitted his Affidavit of Complaint. He further alleges that Crouch "ordered" his arrest anyway, based on a "facially invalid warrant that was premised upon Defendant Craig's materially false statements and/or material omissions." (*Id.* ¶ 62.) At this stage in the proceedings, at least, the court finds that Crouch is not entitled to absolute immunity for actions taken up through and including the plaintiff's arrest, upon which the claims for false arrest, equal protection, and civil

conspiracy under § 1983 are premised, at least in part. The federal and state malicious prosecution claims, however, are by definition grounded in actions taken in connection with the actual prosecution process itself, and Crouch, as a state prosecutor, is clearly entitled to absolute immunity from suit for malicious prosecution.[2] *Imbler*, 424 U.S. at 427–28; *Howell*, 668 F.3d at 350; *Simmons v. Gath Baptist Church*, 109 S.W.3d 370, 374 (Tenn. Ct. App. 2003). Moreover, insofar as the equal protection claim is premised upon Crouch's decisions regarding whom to prosecute, Crouch would be entitled to absolute immunity.

## 2. *Failure to State a Claim*

Crouch separately argues that the Amended Complaint fails to allege sufficient facts to state a colorable claim against him under § 1983 for false arrest or civil conspiracy. Crouch does not actually argue that the equal protection claim is subject to dismissal for failure to state a claim. Instead, he argues only that "[t]his claim fails because General Crouch's motives for prosecuting Plaintiff are irrelevant since the doctrine of absolute immunity shields General Crouch." (Doc. No. 47, at 13.) Insofar as the equal protection claim duplicates the malicious prosecution claim, that argument has merit, but it does not address the equal protection claim that overlaps with the false arrest claim. Nonetheless, the court has found, in addressing the TBI defendants' motion to dismiss this claim, that the Amended Complaint fails to adequately allege that the plaintiff was treated disparately from similarly situated others and, therefore, fails to state a colorable claim for violation of his rights under the Equal Protection Clause. This analysis applies equally to the equal

---

[2] The plaintiff's Response memorandum actually asserts that "Defendant Crouch has not been sued for prosecuting the Plaintiff." (Doc. No. 55, at 17.) The malicious prosecution cause of action set forth in the Amended Complaint is asserted against all defendants and asserts that they "wrongfully instituted legal process against the Plaintiff and subjected the Plaintiff to a . . . wrongful prosecution." (Doc. No. 45 ¶ 49.)

protection claim insofar as it is asserted against Crouch, and the claim against Crouch, too, will be dismissed for failure to state a claim for which relief may be granted.

Regarding false arrest, Crouch asserts that the Amended Complaint fails to state a false arrest claim against him, because he is not alleged to have personally executed the Affidavit of Complaint or the arrest warrant and was not personally involved in effecting the actual arrest. (Doc. No. 47, at 10.) The plaintiff, however, alleges that Crouch personally directed his arrest, despite knowing that probable cause was lacking, citing to a press release that supports such a contention. At this juncture, the court finds that the Amended Complaint states a claim against Crouch for false arrest.

"A civil conspiracy under § 1983 . . . is 'an agreement between two or more persons to injure another by unlawful action.'" *Webb v. United States*, 789 F.3d 647, 670 (6th Cir. 2015) (quoting *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011)). "A plaintiff must show that (1) a 'single plan' existed; (2) defendants 'shared in the general conspiratorial objective' to deprive the plaintiff of his constitutional rights, and (3) '"an overt act was committed in furtherance of the conspiracy that caused [the plaintiff's] injury."'" *Id.* (quoting *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)). A conspiracy claim must be pleaded "with some degree of specificity," and "vague and conclusory allegations unsupported by material facts" are not sufficient to state a conspiracy claim under § 1983. *Id.* The Sixth Circuit also recognizes, however, that a plaintiff will only rarely have direct evidence of the existence of a "common plan" and that "circumstantial evidence may provide adequate proof." *Id.* at 671 (quoting *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000)).

The plaintiff here alleges that defendant Craig swore out an Affidavit of Complaint that contained knowing misrepresentations or omissions and that Crouch directed the investigation into

the posting of the Meme and also directed the plaintiff's arrest, despite actual knowledge that probable cause was lacking. These allegations give rise to a reasonable inference of a plan to deprive the plaintiff of his constitutional rights, that defendants Crouch, Craig, and Vallee "shared in the general conspiratorial objective," and that these defendants took overt actions in furtherance of that plan: Crouch, by directing the investigation and ordering the arrest; Craig, by including false allegations in the Affidavit of Complaint; and Craig and Vallee by arresting the plaintiff without probable cause and "ensuring" that his bail was set punitively high, such that Garton remained in custody until the preliminary hearing before Judge Monsue. The court will not, at this juncture, dismiss the § 1983 conspiracy claim against Crouch.

Crouch does not separately move for dismissal of the First Amendment retaliation claim. That claim, too, survives his Motion to Dismiss.

### 3. *Crouch: Conclusion*

Crouch's Motion to Dismiss will be granted with respect to the equal protection claim and the malicious prosecution claim, insofar as the latter is deemed to be premised upon allegations that Crouch "maliciously institute[d] a false prosecution with no probable cause." *Howell*, 668 F.3d at 350. In all other respects, Crouch's motion to dismiss the individual-capacity claims against him will be denied.

### E. The Official-Capacity Claims Against Crouch and Rausch

The Amended Complaint seeks declaratory and injunctive relief against Crouch and Rausch in their official capacity. Because they are both state officials, the plaintiff effectively seeks relief against the State of Tennessee. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (internal citation omitted)). Suits for damages against a state (or state official) are

barred by sovereign immunity. *Id.*; *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). But, under the so-called *Ex parte Young* exception, "a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law." *Id.* (citing *Ex parte Young*, 209 U.S. 123 (1908)). "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)), *cert. denied*, 141 S. Ct. 1390 (2021).

In support of his claim for injunctive and declaratory relief, the plaintiff alleges "[u]pon information and belief" that Crouch "desires to re-prosecute" him for the "specific instance of protected speech" at issue in this case and "will seek his indictment via direct presentment in the absence of an injunction prohibiting him from doing so." (Doc. No. 45 ¶ 108; *see also id.* ¶ 114 ("Upon information and belief, Defendant[] Crouch . . . may or will continue to pursue the investigation and prosecution of the Plaintiff regarding this specific instance of protected speech absent an injunction.").) The plaintiff claims a "credibl[e] fear[]" of such reprosecution in light of his previous experience with Crouch and the other defendants. (*Id.* ¶¶ 116.) The only factual allegation in support of this claim is that plaintiff's counsel asked Crouch, in the course of this litigation, if he will "affirmatively disclaim all future investigation and prosecution of Mr. Garton regarding this matter, and Defendant Crouch has expressly declined to do so." (*Id.* ¶ 109.) He also alleges that Crouch harbors personal animus against Garton due to Crouch's own close personal friendship with Sergeant Baker and his family. (*Id.* ¶ 110.)

Similarly, the Amended Complaint purports to seek prospective injunctive and declaratory relief against Rausch in his official capacity, based on allegations that the TBI "consider[s] the

investigation of the Plaintiff to be open and ongoing, and [it has] redacted and refused to disclose to the Plaintiff's counsel records that would otherwise be public on the basis that the[] withheld records are 'investigative' in nature." (*Id.* ¶ 111.) The Amended Complaint asserts, "[u]pon information and belief," that Rausch "will direct his agency's resources toward investigating the Plaintiff and anyone who expresses support for the Plaintiff if the Plaintiff again exercises his constitutional right to criticize law enforcement." (*Id.* ¶ 112.) The plaintiff further claims that Rausch, as TBI Director, has "demonstrated a clear and persistent pattern of failing to discipline" TBI agents for constitutional violations (as supposedly demonstrated by the fact that none of the individuals named as defendants in this case has been disciplined in connection with the actions taken against Garton), has implemented policies that are "insufficient to protect the constitutional rights of individuals as those policies are applied and understood," and "allows and participates in retaliation" against citizens who exercise their First Amendment rights. (*Id.* ¶ 113.) The plaintiff asserts that the TBI "may or will continue to pursue the investigation and prosecution of the Plaintiff regarding this specific instance of protected speech absent an injunction" and that the plaintiff "credibl[y] fear[s]" that he will again be unfairly persecuted if he continues to exercise his First Amendment rights.

Crouch argues that the plaintiff's subjective fear, the "upon information and belief" allegations, and Crouch's declination to provide an affidavit requested by plaintiff's counsel together are insufficient to support a claim for prospective injunctive or declaratory relief and that the plaintiff does not allege actual facts to support his assertion that Crouch harbors a desire to reprosecute. (Doc. No. 47, at 14.) Rausch similarly contends that allegations of past events are not sufficient to support claims for prospective relief and that the plaintiff's allegations fail to establish

the existence of an ongoing, "live controversy or a significant possibility of future harm." (Doc. No. 50, at 10.)

The court agrees: Garton's allegations fail to establish an ongoing violation of federal law or a credible threat by either Crouch or Rausch to engage in further unconstitutional conduct. The Amended Complaint fails to state a colorable official-capacity claim against Crouch or Rausch for prospective injunctive or declaratory relief. The claims against Crouch and Rausch in their official capacity will be dismissed for failure to state a claim for which relief may be granted.

## IV.   CONCLUSION

For the reasons set forth herein, the court will grant in part and deny in part the Motions to Dismiss filed by Crouch and the TBI defendants and will grant in its entirety the City defendants' Motion to Dismiss.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge