UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOSHUA GARTON,<br><br>    Plaintiff,<br><br>v.<br><br>W. RAY CROUCH, et al.,<br><br>    Defendants. | Case No. 3:21-cv-00338<br><br>Judge Aleta A. Trauger<br>Magistrate Judge Alistair E. Newbern |

## MEMORANDUM ORDER

Defendants Joseph Craig and Andrew Vallee have moved for a protective order under Federal Rule of Civil Procedure 26(c) regarding the production of Tennessee Bureau of Investigation (TBI) investigation files related to this action. (Doc. No. 73.) Plaintiff Joshua Garton has responded in opposition. (Doc. No. 74.) Craig and Vallee did not file a reply. This matter has been referred to the Magistrate Judge for disposition under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72. (Doc. No. 75.) For the reasons that follow, Craig and Vallee's motion will be granted.

### I.    Background

In January 2021, Garton was "investigated and arrested by a joint law enforcement taskforce for posting a fake photograph on social media" that "was crudely designed to look as though people were urinating on the grave of a deceased police officer." (Doc. No. 45.) The image was accompanied by the text: "Just showing my respect to deputy Daniel Baker from the #dicksoncountypolicedepartment". (*Id.*) Garton alleges that law enforcement knew that the photograph was phony and that the post constituted speech protected by the First Amendment. (*Id.*) Garton states that, even so, he was arrested at the urging of Defendant 23rd Judicial District

Attorney General W. Ray Crouch, "who wanted Mr. Garton punished for disrespecting law enforcement within his jurisdiction." (*Id.*) Garton alleges that Crouch "demanded" that "a joint task force of state and local law enforcement," including TBI Special Agents Craig and Vallee, investigate the social media post "in an effort to identify [Garton] and arrest him." (*Id.*) Garton was charged with criminal conduct and jailed for nearly two weeks before the charge was dismissed for lack of probable cause. (*Id.*) Garton now brings claims under 42 U.S.C. § 1983 against Crouch, Craig, and Vallee including malicious prosecution, false arrest, and First Amendment retaliation. (*Id.*)

Craig and Vallee identified TBI Case File NA-98F-000016—the file created for the investigation that is the subject of Garton's claims (Case File)—in their initial disclosures as evidence on which they will rely in this action. (Doc. No. 73.) Craig and Vallee intend to produce the file in discovery, but ask the Court to enter a protective order limiting the public disclosure of the file as confidential information. (*Id.*) Garton argues that the defendants have not met their burden to show good cause for the entry of a protective order.[1] (Doc. No. 74.)

---

[1] Garton also argues that Craig and Vallee's request that the Case File be treated as confidential shows that the defendants may have "misled the Court regarding the risk that [Garton] will be reinvestigated or re-prosecuted for the protected speech that lies at the heart of this lawsuit." (Doc. No. 74.) Specifically, Garton argues that entry of a protective order on the basis of Tenn. Code Ann. § 10-7-504(a)(2)(A) would indicate that the underlying investigation of Garton remains open, contrary to the position taken by the defendants in arguing for dismissal of Garton's official capacity claims against them. (*Id.*) This argument appears to conflate the exclusion of "all investigative records of the Tennessee bureau of investigation" from disclosure under the TPRA, which does not differentiate between open and closed investigations in its terms, with Tennessee Rule of Criminal Procedure 16, which limits the disclosure and inspection of evidence in the state's possession in criminal litigation and "does not apply to investigative files in possession of state agents or law enforcement officers, where the files have been closed and are not relevant to any pending or contemplated criminal action, but does apply where the files are open and are relevant to pending or contemplated criminal action." *Appman v. Worthington*, 746 S.W.2d 165, 166 (Tenn. 1987). Regardless, this argument seeks to relitigate the Court's decision on the defendants' motions to dismiss (Doc. No. 62) and is not relevant in the context of a Rule 26 motion.

## II. Legal Standard

The scope of discovery in civil litigation falls within the sound discretion of the trial court. *S.S. v. E. Kentucky Univ.*, 532 F.3d 445, 451 (6th Cir. 2008). "Unless otherwise limited by court order," Federal Rule of Civil Procedure 26 allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Rule 26(c)(1) provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by forbidding the discovery of certain information. Fed. R. Civ. P. 26(c)(1). The party seeking the protective order bears the burden to show good cause "with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012) (quoting *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004)). Trial courts have "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

## III. Analysis

Craig and Vallee do not dispute that the Case File falls within the scope of discovery established by Rule 26, and they do not seek a protective order that will prevent the Case File's production. Instead, they ask the Court to enter a protective order that addresses how the parties will use the Case File in this litigation. (Doc. No. 73.) Specifically, Craig and Vallee ask the Court to enter a protective order that authorizes production of the Case File to Garton and designates the Case File and other discovery "consisting of law enforcement records" as confidential information. (*Id.*) Under the terms of the proposed protective order, confidential information

> may only be provided, shared or discussed with the parties, counsel for the parties, employees, administrative staff, other staff members of the parties with a need to know, and witnesses, potential witnesses, experts, agents or entities that the parties, or counsel for the parties, may choose to contact for the purposes of this lawsuit, or any other consultant contacted for purposes of this lawsuit or any fact or allegations set forth in the lawsuit.

(*Id.*)

A confidential information designation "shall not affect the admissibility or use of any [produced materials] that the parties deem necessary for any deposition, hearing or trial in this lawsuit." (*Id.*) If a party seeks to file confidential information in the Court's docket, it shall move to file that information under seal. (*Id.*) However, as the proposed order correctly acknowledges, "[t]he parties' designation of Confidential Information is not binding on the Court for any purpose, including the determination of whether to seal or otherwise restrict public access to the information." (*Id.*) Garton objects to entry of the proposed protective order on two grounds. First, he argues that "[s]tate public records law does not automatically justify a protective order" and that Craig and Vallee have articulated no basis for their motion other than Tenn. Code Ann. § 10-7-504(a)(2)(A), which excludes law enforcement investigation records from disclosure under Tennessee's Public Records Act. (Doc. No. 74.)

Tennessee's Public Records Act (TPRA) serves "a noble and worthwhile purpose by providing a tool to hold government officials and agencies accountable to the citizens of Tennessee through oversight in government activities." *Tennessean v. Metro. Gov't of Nashville*, 485 S.W.3d 857, 864 (Tenn. 2016). To achieve that purpose, the TPRA creates a "presumption of openness for government records." *Id.* It also provides "numerous statutory exceptions to disclosure" for particular categories of records. *Id.* at 865. At issue here is the exception codified at Tenn. Code Ann. § 10-7-504(a)(2)(A) which establishes that "[a]ll investigative records of the Tennessee bureau of investigation . . . shall be treated as confidential" and shall be "disclosed to

the public only in compliance with a subpoena or an order of a court of record . . . ." Tenn. Code Ann. § 10-7-504(a)(2)(A).

This is not a TPRA action, and this Court need not address the relatively straightforward inquiry of whether the Case File is subject to disclosure under that statute. (By the statute's plain terms, it is not unless disclosure is compelled by court order or otherwise.) Rather, the question this Court must answer is whether Tenn. Code Ann. § 10-7-504(a)(2)(A) provides sufficient justification for entry of the protective order Craig and Vallee propose under Rule 26.

The entirety of Craig and Vallee's argument is made in one sentence: "Good cause exists for the entry of a protective order, as such documentation is protected as confidential pursuant to Tenn. Code Ann. § 10-7-504(a)(2)(A)." (Doc. No. 73.) Craig and Vallee offer no further guidance as to how the Court should consider the relevance of the state statute on which they rely to discovery in federal court litigation. Garton frames the issue as follows:

> [T]he fact that a document is not subject to disclosure *under the Tennessee Public Records Act* does not automatically warrant a protective order *under Fed. R. Civ. P. 26(c)*. If it did, then all documents possessed by private parties—none of which are subject to disclosure under the Tennessee Public Records Act—would always warrant a protective order. Such a conclusion would also improperly allow applicable federal law—which requires a specific showing of good cause to warrant a protective order—to be displaced as a matter of course by state law in contravention of the Constitution's Supremacy Clause.
>
> . . .
>
> Given the foregoing, the mere fact that Tennessee public records law would not enable the TBI's investigative file to be released to any citizen who requests it both does not and cannot justify issuing a protective order regarding those records. Further, because no actual, specific harm resulting from the TBI's disclosure of its investigative file has even been alleged, the movants have failed to meet their burden of establishing good cause to justify a protective order.

(Doc. No. 74, PageID# 1998.)

Garton's first argument is wide of the mark. Finding that the exception of a certain class of documents from production under the TPRA supports entry of a protective order would not require also finding that documents not addressed by the TPRA or its exceptions at all—like those held by private parties—be protected from disclosure. Garton's second argument raises more salient considerations. As Garton notes, determining whether Tennessee's designation of certain categories of documents as confidential under the TPRA provides a basis for limiting the disclosure of those documents under Rule 26 requires considering the effect of state law on federal procedure. The answer, however, is more nuanced than the one that Garton provides.

Other courts that have addressed this issue have found that, while a state's designation of certain information as confidential does not control a federal court's determination of whether that information must be disclosed in discovery, it is a relevant factor to be considered in the Rule 26 inquiry. For example, in *Seales v. Macomb County*, the court addressed Plaintiff Eric Seales's claims under 42 U.S.C. § 1983 that he was maliciously prosecuted for assault and battery after being physically restrained by his caretakers at the Macomb County Juvenile Youth Home as a disciplinary measure. *Seales v. Macomb Cnty.*, 226 F.R.D. 572, 575 (E.D. Mich. 2005). In discovery, Seales moved to compel production of Macomb County Juvenile Youth Home records, including the identities of other residents, copies of grievances and complaints filed by other residents, and case files for other residents who had been subjected to similar discipline. *Id.* The state defendants argued that Michigan's confidentiality statutes limiting the disclosure of juvenile records prohibited disclosure of that information in discovery.[2] *Id.*

---

2    Michigan's Child Care Organizations Act of 1973, as considered by the court, states, in pertinent part:

> Except as otherwise provided . . . records regarding children and facts compiled about children and their parents and relatives are confidential and disclosure of

The court found that Michigan's statutory confidentiality provision did not create a state-law evidentiary privilege; that a federal court would not be bound by a state-law evidentiary privilege in applying the federal discovery rules; and that there was nothing to "commend elevating [the Michigan confidentiality provision] to the status of a federal evidentiary privilege." *Id.* at 576–77. The court thus concluded that "the Michigan confidentiality statutes on which Defendant relies do not have controlling weight, and the discoverability of the information is governed instead by the general principles set forth in [Rule 26(b)]." *Id.* "However," the court continued, "the state confidentiality statutes should be allotted *some* weight, along with other factors in deciding which materials should be discoverable." *Id.* To that end, the court weighed "the public policy of shielding youth records from disclosure" against "[the] Plaintiff's need for information" and required production of some of the requested information while protecting other information from disclosure. *Id.*

Courts regularly strike the same balance, finding that a state's statutory confidentiality measures do not control the scope of discovery in federal court but do merit consideration in defining the scope of discovery. *See, e.g.*, *G.K. v. Sununu*, No. 21-CV-4-PB, 2021 WL 6932204, at *3 (D.N.H. Dec. 30, 2021) (ordering production under Rule 26 of New Hampshire Division of Children, Youth and Families files excepted from disclosure under that state's public records act on grounds that "'[s]tate statutes, while binding on state courts determining privilege, do not bind federal courts deciding federal questions'" but limiting disclosure in recognition of state interests (quoting *Moses v. Mele*, No. 10-CV-253-PB, 2011 WL 2174029, at *5 (D.N.H. June 1, 2011)); *Henry A. v. Willden*, 271 F.R.D. 184, 190 (D. Nev. 2010) (finding that Nevada statutes upon

---

> this information shall be properly safeguarded by the child care organization, the department and any other entity in possession of the information.

*Seales*, 226 F.R.D. at 575 (quoting M.C.L. § 722.120(2); M.S.A. § 25.358(20)(2)).

which defendant relied to prevent disclosure of foster care case files did not justify a protective order preventing discovery under Rule 26 but noting that separate limiting protective order was sufficient to address state interests); *Dwayne B. v. Granholm*, No. CIV.A. 06-13548, 2007 WL 2372363, at *1 (E.D. Mich. Aug. 17, 2007) (expressing "accord" with plaintiff's position that "the Federal Rules of Civil Procedure take precedence over state confidentiality statutes in defining the scope of discovery in federal cases" and with defendants' position that "policy interests underlying a state statute must be considered by the court in determining the proper scope of discovery in a federal case"); *cf. Pearson v. Miller*, 211 F.3d 57, 69 (3d Cir. 2000) ("Considerations of comity require that we at least consider these 'privileges,' as well as the confidentiality interests otherwise protected under the laws of the Commonwealth [of Pennsylvania], although our ultimate task remains the determination of the issue of whether privileges associated with these statutes and the confidentiality that they seek to protect are cognizable under Federal Rule of Evidence 501.").

Assessing the comity considerations in this case yields a similar conclusion. The federal interests are easily identified. Section 1983 "entitles an injured person to money damages if a state official violates his or her constitutional rights." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). A plaintiff bringing claims under Section 1983 must be able to "obtain discovery regarding any nonprivileged matter that is relevant to [those claims and any defenses] and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Allowing a state's designation of its own law enforcement files as confidential to preclude their production in federal court discovery would unduly hinder a Section 1983 plaintiff's ability to access the remedy prescribed by Congress to ensure that state actors do not infringe upon federal

constitutional rights. Rule 26 thus requires that the Case File be produced for Garton to use in this litigation.

Tennessee's interests in maintaining the Case File's confidentiality are established by the TPRA. "The statute excepting investigative records of the TBI from disclosure [under the TPRA] is clear and unambiguous . . . ." *Higgins v. Gwynn*, No. M2011-00553-COA-R3CV, 2012 WL 214829, at *2 (Tenn. Ct. App. Jan. 23, 2012) "All investigative records of the Tennessee bureau of investigation" are "treated as confidential and shall not be open to inspection by members of the public." Tenn. Code Ann. § 10-7-504(a)(2)(A). Further, "'[w]hile it is clear that Section 10-7-504(a)(2)(A) contemplates that TBI investigative files may become relevant to and involved in legal proceedings through "a court order or subpoena," [the Tennessee Court of Appeals does not] believe that the General Assembly intended for such information to automatically lose its confidentiality as to the public once it becomes a judicial record.'" *State ex rel. Johnson v. Gwyn*, No. M-01302640COAR3CV, 2015 WL 7061327, at *5 (Tenn. Ct. App. Nov. 10, 2015) (quoting *State v. Cobbins*, No. E2013–02726–CCA–WR–CO (Tenn.Crim.App. Feb. 4, 2015).

Weighing these state and federal interests, the Court concludes as follows: Rule 26 mandates that Garton obtain the Case File in discovery for use to pursue his claims in this action. The TPRA recognizes that TBI investigative files may be used in litigation when a court so orders, but seeks to limit the public dissemination of confidential information outside that context. The protective order proposed by Craig and Vallee strikes an appropriate balance between these interests.

Under the protective order's terms, the Case File and other law enforcement records designated as confidential may be widely disseminated within the litigation; confidential information can be provided to and discussed with the parties, their counsel and staff, witnesses,

experts, and any others counsel "may choose to contact for the purposes of this lawsuit." (Doc. No. 73.) Confidential information may be used in depositions and at hearings and in trial. (*Id.*) If a party seeks to file confidential information in the Court's public record, the protective order requires that he or she move to do so under seal. (*Id.*) But, as the protective order recognizes, the determination of whether confidential information will be filed under seal remains with the Court. The Sixth Circuit has recently emphasized the "stark difference" between limiting disclosure in discovery and filing information under seal in a court's docket—"[u]nlike information merely exchanged between the parties [in discovery], '[t]he public has a strong interest in obtaining the information contained in the court record.'" *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016) (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983)). Accordingly, "'[o]nly the most compelling reasons can justify non-disclosure of judicial records.'" *Id.* (quoting *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 476 (6th Cir. 1983)). A party seeking to file information under seal bears a "heavy" burden and "must 'analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations.'" *Id.* (quoting *Baxter Int'l, Inc. v. Abbott Lab'ys*, 297 F.3d 544, 545 (7th Cir. 2002)).

Other courts have recognized the role of similar protective orders in striking the appropriate balance between federal discovery standards and state-law confidentiality measures. In *Seales*, the court noted that all of the information produced would be "subject to a protective order" entered by the parties' agreement. *Id.* at 575 n.2. Under that protective order, the disclosure of any document produced "which is not available to the public under the Michigan Freedom of Information Act" was restricted and the document could be "used by the discovery party only for the purpose of this litigation and for no other purpose." Order Granting Motion to

10

Case 3:21-cv-00338    Document 85    Filed 01/23/23    Page 10 of 12 PageID #: 2039

Compel and Protective Order, *Seales v. Macomb Cnty*, Case No. 03-40336, Doc. No. 22 (E.D. Mich. Aug. 4, 2004). In *G.K.*, the court noted that the parties had entered into a joint protective order that would "protect[] against public disclosure of such information and bind[] defense counsel to limit disclosure . . . only to situations where such disclosure is reasonably necessary." 2021 WL 6932204, at *4; *see also id.* at *6 ("[T]he court finds that the confidentiality provisions and the plaintiffs' attorneys' obligations under the [joint protective order] . . . will serve the dual interests of appropriately safeguarding the information at issue, without impeding plaintiffs' rights to pursue their claims."). In *Henry A.*, the court found that a previously entered "protective order governing confidentiality" applied to the produced discovery, "prohibit[ed] use of this confidential information for any purpose other than the prosecution, defense or settlement of this action," and was "detailed and comprehensive and . . . sufficient to protect the privacy interests at stake." *Henry A. v. Willden*, 271 F.R.D. 184, 190 (D. Nev. 2010).

      This Court will follow suit. The protective order proposed by Craig and Vallee does not restrict Garton's use of the Case File and other confidential information in litigating his claims.[3] Its requirement that a party seeking to file confidential information move to do so under seal ensures that any arguments that confidential information be excluded from the public record be made with specificity and considered by the Court under a stringent standard that prioritizes public access to court records. This is an appropriate balancing of interests under Rule 26. *B&P Littleford, LLC v. Prescott Mach., LLC*, No. 1:20-CV-13025, 2022 WL 625069, at *8 (E.D. Mich. Mar. 3, 2022).

---

[3]     In fact, none of Garton's arguments identifies any harm that would result from entry of the limited protective order that Craig and Vallee propose.

## IV. Conclusion

For these reasons, Craig and Vallee's motion for a protective order (Doc. No. 73) is GRANTED. The protective order will be entered separately.

It is so ORDERED.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge